**Michael BOOTHE, Plaintiff-Appellant,**

**v.**

**Edward HAMMOCK, Chairman, New York State Board of Parole, Defendant-Appellee.**

No. 1246, Docket 78–2151.

United States Court of Appeals, Second Circuit.

Argued July 18, 1979.

Decided Sept. 14, 1979.

---

Karen Hutson, New York City (LeBoeuf, Lamb, Leiby & MacRae, New York City, on brief), for plaintiff-appellant.

Clement H. Berne, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen., George D. Zuckerman, Asst. Sol. Gen., New York City, on brief), for defendant-appellee.

Before VAN GRAAFEILAND, NEWMAN and KEARSE, Circuit Judges.

NEWMAN, Circuit Judge:

This appeal from dismissal of a state prisoner's civil rights complaint concerns the impact of the Supreme Court's recent decision in *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex*, —— U.S. ——, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), upon the federal rights of New York prisoners seeking parole.

Plaintiff-appellant Michael Boothe was sentenced in 1974 by the New York Supreme Court (Kings County) to four consecutive indeterminate terms not to exceed 25, 15, 7 and 4 years. On February 12, 1975, he appeared before a panel of the New York Board of Parole for determination of his minimum period of imprisonment (MPI),[1] a procedure authorized by what was formerly N.Y.Correction Law § 212(2) (McKinney Supp.1976). See *Coralluzzo v. New York State Parole Board*, 566 F.2d 375 (2d Cir. 1977), *cert. dismissed as improvidently granted*, 435 U.S. 912, 98 S.Ct. 1464, 55 L.Ed.2d 503 (1978). The Board set a four-year MPI, expiring on April 9, 1978. In March, 1978, Boothe met with a panel of the Board for a parole release hearing held pursuant to N.Y.Executive Law 259–i2(c) (McKinney Supp.1978). The Board denied parole and ordered that Boothe next be considered for parole in September, 1979.

---

1. Authority for determination of a minimum period of imprisonment was formerly contained in N.Y.Correction Law § 212(2) (McKinney Supp.1976) and is now set forth in N.Y.Executive Law § 259–i1(a) (McKinney Supp.1978).

Plaintiff brought suit against the Board pursuant to 42 U.S.C. § 1983, alleging essentially that determination of the four-year MPI was accomplished in violation of procedures required by the Due Process Clause of the Fourteenth Amendment. Specifically he alleged that he was furnished no reasons for the fixing of the four-year MPI, nor informed of what was expected of him to improve his chances for parole release. The District Court for the Western District of New York (John T. Elfvin, Judge) dismissed the complaint as moot, concluding that the March, 1978 parole denial was accompanied by a sufficient statement of reasons and that this denial rendered inconsequential any infirmity that might have existed in the February, 1975 establishment of Boothe's MPI. In his appeal, Boothe contends (a) that the original MPI has collateral consequences that require determination of whether he was afforded due process when the MPI was set in 1975 and (b) that the 1978 parole denial does not moot his MPI claim because it, too, failed to comply with due process requirements.

Prior to *Greenholtz*, this Court had held that a state prisoner's interest in securing release on parole was sufficient to require some due process safeguards, *United States ex rel. Johnson v. Chairman of New York State Board of Parole*, 500 F.2d 925 (2d Cir.), *vacated as moot sub nom. Regan v. Johnson*, 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974), and that a similar result obtained with respect to MPI determinations, *Coralluzzo v. New York State Parole Board, supra*. We are now obliged to reassess those holdings under the principles announced in *Greenholtz*.

The fundamental point made by the five-member majority in *Greenholtz* was that the possibility of parole release is not an interest entitled to due process protection. It was this fundamental point from which four members of the Court emphatically dissented. —— U.S. at ——, 99 S.Ct. 2100 (Powell, J., concurring in part and dissenting in part), —— U.S. at ——, 99 S.Ct. 2100 (Marshall, J., with whom Brennan and Stevens, JJ., join, dissenting in part). This Court in *Johnson* had rejected the distinction between a liberty interest currently enjoyed but subject to termination (parole revocation) and an interest that can be enjoyed in the future following an administrative proceeding (parole release). 500 F.2d at 927–28. The *Greenholtz* majority specifically upheld this distinction, citing with approval Judge Hays' dissenting opinion in *Johnson*. —— U.S. at ——, 99 S.Ct. 2100. Thus, the rationale of *Johnson*, and therefore of *Coralluzzo*, has been rejected.

The *Greenholtz* majority also concluded, however, that a state's statutory scheme for determining parole release can create a protectible expectation of parole, which is entitled to some due process safeguards. The Nebraska statute, Neb.Rev.Stat. § 83–1,-114(1), was held to be that type of statute. The only characteristic of the Nebraska statute that the Court mentioned as relevant to this conclusion was the requirement that release "shall" be ordered "unless" one of four disqualifying conditions is found to exist.[2] The Court emphasized that the Nebraska statute "has unique structure and language and thus whether any other state statute provides a protectible entitlement must be decided on a case-by-case basis." —— U.S. at ——, 99 S.Ct. at 2106.

**2.** The Nebraska statute provides:

"Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it shall order his release unless it is of the opinion that his release should be deferred because:
(a) There is a substantial risk that he will not conform to the conditions of parole;
(b) His release would depreciate the seriousness of his crime or promote disrespect for law;

(c) His release would have a substantially adverse effect on institutional discipline; or
(d) His continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his capacity to lead a law-abiding life when released at a later date." Neb.Rev.Stat. § 83–1,114(1).

In dissent, Justice Marshall observed that the factors relevant to parole release in Nebraska are similar to the factors mentioned in the laws of 47 other states, from which he concluded that the majority's analysis "would therefore suggest that the other statutes must also create protectible expectations of release." —— U.S. at ——, 99 S.Ct. at 2115 (footnote omitted). Justice Marshall may be correct in implying that the majority accorded excessive significance to the "shall/unless" formula of the Nebraska statute. Once a legislature has identified as factors relevant to parole release decision-making such amorphous criteria as whether release will depreciate the seriousness of the crime and whether further correctional treatment will enhance the inmate's capacity to be law-abiding, it is difficult to imagine that a board's decisions will be different under a scheme that requires release unless adverse findings based on such criteria are made than under a scheme that simply obligates the board to consider such criteria in exercising its discretion. But one cannot fairly read the majority's opinion in *Greenholtz* without concluding that the majority thought there was not only a difference, but a difference on which entitlement to due process safeguards depends. Despite Justice Marshall's valiant attempt to maintain due process safeguards, the majority could not have called the Nebraska scheme "unique" if it believed that it resembled the statutes of the 47 other states that identify, as relevant to parole decision-making, the same factors mentioned in the Nebraska statute. The "shall/unless" formula was decisive for the Court.

It is apparent that New York's parole provisions, unlike Nebraska's, do not establish a scheme whereby parole shall be ordered unless specified conditions are found to exist. Both the setting of an MPI and the decision whether to release at the expiration of the MPI are matters committed to the discretion of the Parole Board.[3] While guidelines are used to structure the exercise of discretion,[4] see N.Y.Executive Law § 259–c4 (McKinney Supp.1978), no entitlement to release is created.

■ Applying *Greenholtz* to the New York parole provisions, we conclude that the holdings of *Johnson* and *Coralluzzo* have been overruled and that all of Boothe's due process claims are without merit. The state *procedural* requirements that he alleges have not been observed do not create interests entitled to due process protection, *Cofone v. Manson*, 594 F.2d 934,

---

**3.** The parole statute explicitly states:

*Discretionary* release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined but after considering *if* there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law.

N.Y.Executive Law § 259–i2(c) (McKinney Supp.1978) (emphasis added).

**4.** The Parole Board is required to:

establish written guidelines for its use in making parole decisions as required by law, including the fixing of minimum periods of imprisonment or ranges thereof for different categories of offenders.

N.Y.Executive Law § 259–c 4 (McKinney Supp. 1978).

Guidelines governing MPI decisions are to include:

(i) the seriousness of the offense with due consideration to the type of sentence, length of sentence and recommendations of the sentencing court, the district attorney, the attorney for the inmate, the pre-sentence probation report as well as consideration of any mitigating and aggravating factors, and activities following arrest and prior to confinement; and (ii) prior criminal record, including the nature and pattern of offenses, adjustment to any previous probation or parole supervision and institutional confinement.

*Id.* § 259–i 1(a).

Guidelines governing parole release decisions require consideration of:

(i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interpersonal relationships with staff and inmates; (ii) performance, if any, as a participant in a temporary release program; and (iii) release plans including community resources, employment, education and training and support services available to the inmate.

*Id.* § 259–i 2(c).

938–39 (2d Cir. 1979), and are matters for consideration by the state courts.

The judgment dismissing the complaint is affirmed on the merits.[5]

5. This opinion was circulated to all active judges of the Court prior to filing.