Frank **BERARD**, Plaintiff-Appellant,

v.

**STATE OF VERMONT PAROLE BOARD**, Defendant-Appellee.

No. 657, Docket 83–2264.

United States Court of Appeals, Second Circuit.

Argued Jan. 17, 1984.

Decided March 6, 1984.

Peter F. Langrock, Middlebury, Vt. (Langrock Sperry Parker & Wool, Middlebury, Vt., of counsel), for plaintiff-appellant.

Susanne R. Young, Asst. Atty. Gen., Dept. of Corrections, Waterbury, Vt. (John J. Easton, Jr., Atty. Gen., Charles A. Bris-

tow, Deputy Atty. Gen., State of Vt., Montpelier, Vt., of counsel), for defendant-appellee.

Before FEINBERG, Chief Judge, and VAN GRAAFEILAND and KEARSE, Circuit Judges.

FEINBERG, Chief Judge.

Frank Berard appeals from a judgment of the United States District Court for the District of Vermont, Jerome J. Niedermeier, Magistrate, granting defendant Vermont Parole Board (the Board) summary judgment. The case was referred to the magistrate on the consent of the parties pursuant to 28 U.S.C. § 636(c)(1), and appeal from the judgment was taken directly to this court pursuant to 28 U.S.C. § 636(c)(3). On appeal, Berard argues that the procedures afforded him under the Vermont parole statute, Vt.Stat.Ann. tit. 28 §§ 501 et seq., failed to satisfy due process. Because we find that under governing precedents Berard has no legitimate expectation of release on parole, we affirm the judgment of the district court.

## I.

The facts are briefly as follows: After Berard's conviction for murder in the first degree, he was sentenced in February 1973 to a term of life imprisonment with no minimum term. The Board periodically has reviewed Berard's eligibility for parole since his incarceration, and after each review has informed him that the decision of the Board was: "Not determined to be eligible for parole at this time."

In September 1982, Berard filed a pro se complaint in the district court under 42 U.S.C. § 1983, alleging that the Board had violated his civil rights, and seeking declaratory and injunctive relief. Berard alleged, among other things, that the Board denied him various due process rights, including timely notice of hearings, the right to appear before the Board and an adequate statement of reasons for denial of parole.

Following the consensual reference to a magistrate, both sides moved for summary judgment. In a memorandum of decision dated December 22, 1982, the magistrate granted the Board's motion for summary judgment with respect to Berard's due process claims arising under Vt.Stat.Ann. tit. 28 § 501(a) and the rules and regulations of the Board since, under *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), and *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981), neither the statute nor the Board's rules and policies gave Berard a liberty interest entitled to due process protection. However, the magistrate denied the Board's motion for summary judgment with respect to Berard's due process claims pursuant to Vt.Stat.Ann. tit. 28 § 501(b) & (c) since it was unclear from the record whether those subsections created an expectancy protected by due process. Berard's motion for summary judgment was denied. Subsequently, both sides made supplemental motions for summary judgment. By memorandum of decision dated June 16, 1983, the magistrate granted the Board's supplemental motion for summary judgment, holding that while Berard is entitled to receive parole eligibility review under Vt.Stat.Ann. tit. 28 § 501(b), Vt.Stat.Ann. tit. 28 § 501(c) "does not provide plaintiff with an expectancy of release on parole upon satisfaction of specific criteria.... [T]he Parole Board has discretionary authority to determine when prisoners shall be released on parole." This appeal followed.

## II.

In *Greenholtz*, the Supreme Court made a sharp distinction between "a mere hope" of parole, and a "protectible" expectation of parole, 442 U.S. at 11, 99 S.Ct. at 2105. The mere existence of a state-created parole system provides only the former, and is insufficient to invoke due process protection. But the specific language of the relevant statutory scheme may give rise, as it did in *Greenholtz*, to the latter. Thus, to decide the threshold issue of whether an inmate serving a sentence of life imprison-

ment with no minimum term of imprisonment has a legitimate expectation of release on parole, we must turn to the language of Vermont's parole statute.

■ Vt.Stat.Ann. tit. 28 § 501 governs eligibility for parole, and is reproduced in the margin as it read when Berard filed his action.[1] Subsection (a) provides for eligibility for inmates who have served a minimum term and states that such an inmate "shall be released on parole ... if the board determines there is a reasonable probability that the inmate can be released without detriment to the community or to himself." Subsection (b) provides that if no minimum term has been established, the Board shall review eligibility for parole "at such time as it may establish through the issuance of its rules and regulations." The Rules and Procedures Adopted by the Vermont Parole Board (July 1, 1974, as amended December 5, 1975) at 3 (Rules and Procedures), state that the Board "will review available, pertinent information concerning inmates with zero minimums on the recommendation of the superintendent of the correctional facility, or six months after incarceration. Thereafter, the Board will review available, pertinent information [concerning such inmates] at the recommendation of the Superintendent, but at least every six months." Apparently, the Board

periodically has been reviewing Berard's eligibility for parole under this section. Subsection (c) of the statute states that the Board shall consider all pertinent information regarding each inmate in order to determine eligibility for parole, and further states that an "inmate shall be released on parole only when the board determines that the inmate is willing to fulfill the obligations of a law-abiding citizen." The Board's Rules and Procedures also list various factors to be considered in granting parole.

Berard contends that Vermont's statutory scheme creates a legitimate expectancy of release on parole. He points out that an inmate convicted of first degree murder, as he was, is not precluded from parole eligibility, see *State v. Battick*, 133 Vt. 558, 349 A.2d 221, 222 (1975), and that the Board's stated policy is "that only in extraordinary circumstances should an inmate serve his maximum time," Rules and Procedures, supra, at 3, 5–6. However, under *Greenholtz*, in order to be accorded some measure of due process protection, an inmate must have a legitimate expectancy of release grounded in the state's statutory scheme. Neither the mere possibility of release, see *Boothe v. Hammock*, 605 F.2d 661, 663 (2d Cir.1979); cf. *Pugliese v. Nelson*, 617 F.2d 916, 925 (2d Cir.1980), nor a

---

1. In September 1982, Vt.Stat.Ann. tit. 28 § 501 (1982 Supp.) read as follows:

§ 501. Eligibility for parole

(a) After an inmate has served the minimum term of his sentence, if any minimum has been established, less any reductions for good behavior which have been computed in accordance with section 811 of this title, he shall be released on parole by the written order of the parole board if the board determines there is reasonable probability that the inmate can be released without detriment to the community or to himself.

(b) If no minimum term has been established, the board shall review the eligibility of an inmate for parole at such time as it may establish through the issuance of its rules and regulations.

(c) The board shall consider all pertinent information regarding each inmate, in order to determine his eligibility for parole, within six months after his commitment to any correctional facility and at such intervals thereafter as it may determine but not less than

once a year. The information shall include the circumstances of the inmate's offense, his previous social history and criminal record, any presentence report, the inmate's conduct and employment at the correctional facility wherein he was confined and the reports of such physical and mental examinations as have been conducted. An inmate shall be released on parole only when the board determines that the inmate is willing to fulfill the obligations of a law-abiding citizen.

This section was amended in 1983. See 1983 Vt. Acts No. 89 § 2, at 212–13,codified at Vt.Stat. Ann. tit. 28 § 501 (1983 Supp.). These amendments included an addition to subsection (b) under which inmates with zero minimum terms are reviewed for eligibility in the same way as inmates with no minimum sentence, within six months after commitment and then not less than once a year. Subsection (c) was also amended to make clear that the Board must consider "all pertinent information regarding each inmate referred to in subsection (b)."

statistical probability of release, cf. *Connecticut Board of Pardons v. Dumschat,* supra, gives rise to a legitimate expectancy of release on parole.

In analyzing *Greenholtz,* which involved Nebraska's parole statute, this court has concluded that the

> only characteristic of the Nebraska statute that the Court mentioned as relevant ... was the requirement that release "shall" be ordered "unless" one of the four qualifying conditions is found to exist. The Court emphasized that the Nebraska statute "has a unique structure and language and thus whether any other state statute provides a protectible entitlement must be decided on a case-by-case basis."

*Boothe v. Hammock,* supra, 605 F.2d at 663 (footnote and citation omitted). We also stated that the "shall/unless" formula of the Nebraska statute in *Greenholtz* was "decisive for the Court." *Boothe,* supra, 605 F.2d at 664.[2] Finding that the New York parole statute did not contain the "decisive" "shall/unless" formula, *Boothe* held that the statute did not create an interest entitled to due process protection. Id. But see *United States ex rel. Scott v. Illinois Parole and Pardon Board,* 669 F.2d 1185, 1188 n. 3 (7th Cir.) (per curiam), cert. denied, 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982); *Winsett v. McGinnes,* 617 F.2d 996 (3d Cir.1980) (in banc), cert. denied, 449 U.S. 1093, 101 S.Ct. 891, 66 L.Ed.2d 822 (1981) (Chief Justice Burger voted to grant certiorari and summarily reverse; Justices White and Rehnquist dissented from denial of certiorari.)

■ We turn now to application of this analysis to the Vermont parole scheme. At the outset, we note that the Supreme Court of Vermont has indicated that inmates such as Berard have no liberty interest. In *In re Finnigan,* 136 Vt. 183, 388 A.2d 28, 28–29 (1978) (per curiam), the Court noted a stipulation by the parties in that case "that no person sentenced in Vermont to life imprisonment for first degree murder has been paroled and the parole board has never adopted procedures or regulations providing for such parole." This would appear to undermine Berard's claim that he has a legitimate expectation of release on parole since he was sentenced to life imprisonment for first degree murder.

Moreover, the only language in Section 501 that resembles the decisive "shall/unless" formula of *Greenholtz* appears in subsection (a). See note 1 supra. Thus, Berard focuses on the requirement in this subsection that after an inmate has served a minimum term he *"shall* be released on parole ... *if* the board determines there is a reasonable probability that the inmate can be released without detriment to the community or to himself." (emphasis added). However, this standard, on its face, applies only to inmates with a minimum term, and Berard concedes that he has no minimum term. Accordingly, the "shall/if" standard in subsection (a) is not relevant to Berard's parole determination, and there is no need to analyze whether that language accords an inmate a liberty interest. Rather, we must look to subsections (b) and (c), see note 1 supra, to determine whether those subsections accord Berard a legitimate expectation of release on parole.

Subsections (b) and (c) are capable of two constructions, and on this record and in the

---

**2.** The Nebraska statute in *Greenholtz* provided, in relevant part, that:

> Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it *shall* order his release *unless* it is of the opinion that his release should be deferred because:
> (a) There is a substantial risk that he will not conform to the conditions of parole;
> (b) His release would depreciate the seriousness of his crime or promote disrespect for law;

> (c) His release would have a substantially adverse effect on institutional discipline; or
> (d) His continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his capacity to lead a law-abiding life when released at a later date.
> Neb.Rev.Stat. § 83–1, 114(1). (Emphasis added).

absence of decisions construing the Vermont statute, we cannot be sure which is correct. The first construction, advanced by the Board, is that it determines parole in a two-step process of first determining whether an inmate is eligible for parole and then deciding whether release is warranted. Cf. *Priore v. Nelson*, 626 F.2d 211, 216 (2d Cir.1980) ("mere eligibility for parole does not entitle the prisoner to parole.") Viewed this way, subsection (b) merely provides that, with respect to inmates with no minimum term, the Board shall review *eligibility* for parole, but the subsection does not spell out the criteria for determining an inmate's eligibility. Subsection (c) sets forth the procedure for the Board's review as to timing and information to be considered, and places a condition on the inmate's *release*, i.e., a determination that the inmate is willing to fulfill the obligations of a law-abiding citizen. Under this analysis, neither the language in subsection (c) nor the Board's own rules sets the boundaries of the Board's determination as to parole eligibility; rather, that determination is left to the Board's discretion. See *Connecticut Board of Pardons v. Dumschat*, supra, 452 U.S. at 466, 101 S.Ct. at 2465. Decisions that are "purely discretionary," see *Wagner v. Gilligan*, 609 F.2d 866, 867 (6th Cir.1979) (per curiam), or ultimately discretionary with parole authorities, see *Staton v. Wainwright*, 665 F.2d 686, 688 (5th Cir.), cert. denied, 456 U.S. 909, 102 S.Ct. 1757, 72 L.Ed.2d 166 (1982) (relying heavily on *Boothe v. Hammock*, supra), do not create a protectible liberty interest under the Supreme Court decisions discussed above or under *Boothe*.

A second construction of subsections (b) and (c) is that the Board determines eligibility and release in a single step ultimately governed by the standard set out in subsection (c) that: "An inmate shall be released on parole only when the board determines that the inmate is willing to fulfill the obligations of a law-abiding citizen." This standard does not contain the "shall/unless" language deemed "decisive" by this court in *Boothe*. Moreover, the "shall be released ... only when" language does

"not establish a scheme whereby release shall be ordered unless specified conditions are found to exist." *Boothe*, supra, 605 F.2d at 664. Rather, the language sets out a requirement which must be met before an inmate may be released; it does not mandate release upon a finding that the standard is met. Put another way, unlike *Greenholtz*, there is no presumption under the Vermont parole statute or Board rules that Berard will be released unless certain defined negative findings are made.

Thus, we believe that we are constrained to find under *Greenholtz* and *Boothe* that Berard does not have a legitimate expectation of release on parole warranting due process protection. Accordingly, the judgment of the district court is affirmed.