**UNION OF NEEDLETRADES, INDUSTRIAL AND TEXTILE EMPLOYEES, AFL–CIO, CLC, Plaintiff–Appellant,**

v.

**UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, Defendant–Appellee.**

**Docket No. 02–6188.**

United States Court of Appeals, Second Circuit.

Argued March 12, 2003.

Decided July 16, 2003.

Edward Scarvalone, Assistant United States Attorney, Southern District of New York, New York City (James B. Comey, United States Attorney for the Southern District of New York, Gideon A. Schor, Assistant United States Attorney, Southern District of New York, New York City, of counsel), for Appellee.

Before: OAKES, MESKILL and CABRANES, Circuit Judges.

MESKILL, Circuit Judge.

Plaintiff-appellant Union of Needletrades, Industrial and Textile Employees, AFL–CIO, CLC (UNITE) appeals from a judgment of the United States District Court for the Southern District of New York, Marrero, J., and seeks review of the denial of UNITE's request for an award of attorney's fees. We affirm.

This appeal requires us to decide whether, in view of the Supreme Court's decision in *Buckhannon Board and Care Home v. West Virginia Department of Health and Human Resources*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (*Buckhannon*), a plaintiff in an action brought under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, can recover an award of attorney's fees where, despite achieving the release of the requested information, it does not secure any judicially sanctioned relief such as a judgment on the merits or a court-ordered consent decree.

## BACKGROUND

UNITE is a union of approximately 300,000 members, many of whom are immigrants. On November 16, 1998, the defendant-appellant Immigration and Naturalization Service (INS)[1] conducted a raid

Ranjana Natarajan, Washington Square Legal Services, Inc., New York City (Michael Wishnie, Washington Square Legal Services, Inc., New York City, of counsel), for Appellant.

---

1. As of March 1, 2003, the INS ceased to exist as an agency under the umbrella of the Department of Justice. Its immigration enforcement functions thereafter were transferred to the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub.L. No.

of Poly–Pak Industries (Poly–Pak), a garment factory in Melville, New York that employed numerous UNITE members. According to UNITE, the INS had conducted similar raids of UNITE-organized factories in the past, arresting workers it believed to be illegal or undocumented aliens. UNITE had become concerned that employers were using INS raids to retaliate against workers engaged in union-organizing activities. It also had received reports that INS officers conducting these raids were mistreating workers and engaging in race-based selective prosecution tactics.

In the late 1990s, as part of its effort to investigate and explore the above-mentioned concerns, UNITE began submitting FOIA requests to the INS aimed at gathering information relating to workplace raids. This action stems from UNITE's May 5, 1999 FOIA request to the INS, which sought all documents in the INS's possession concerning the November 1998 Poly–Pak raid "and the events preceding and following its occurrence." The INS's New York district office denied the request on August 18, 1999, claiming that, under FOIA exemption 7(A), 5 U.S.C. § 552(b)(7)(A), the information sought reasonably could be expected to interfere with an open investigation and law enforcement proceedings. According to the INS, its investigation unit had made the decision earlier that year to institute administrative enforcement proceedings against Poly–Pak due to the company's employment of illegal or undocumented aliens.

On September 16, 1999, UNITE filed an administrative appeal with the Department of Justice's Office of Information and Privacy in which it challenged the INS's denial of its request. That office denied

UNITE's appeal on March 10, 2000, again relying on FOIA exemption 7(A). In response, on March 30, 2000, UNITE filed this action in the district court seeking an order directing the INS to comply with its FOIA request.

On June 12, 2000, the INS concluded its enforcement proceeding against Poly–Pak and entered into a settlement that required the company to pay a fine. The INS's FOIA office subsequently obtained the Poly–Pak file and copied the materials relating to the investigation and enforcement action. In August 2000, several months after UNITE had initiated its action in federal court, the INS produced 1,325 documents. It withheld twenty-five pages and made a number of redactions to prevent disclosure of attorney-client and work product material, personal information concerning individuals' names and social security numbers, and documents that potentially could reveal the investigative techniques used by the INS. Following this initial production, the parties engaged in numerous discussions relating to the withheld documents, and on April 27, 2001, the INS released several more documents. The parties subsequently informed the district court that they had "settled all of the substantive issues in the case" and that the only remaining matter was attorney's fees. Accordingly, the district court directed that the case be conditionally discontinued, subject to its being restored on UNITE's application in the event that resolution of the issue of attorney's fees was not achieved within sixty days. The district court never rendered a judgment on the merits or endorsed a consent decree or settlement agreement, nor was it asked to do so by the parties.

107–296, § 441, 116 Stat. 2135, 2192 (Nov. 25, 2002). For ease of reference and because of the agency's status at the time the case was

briefed, this opinion refers to the defendant as the INS.

On June 18, 2001, when the parties had failed to reach an agreement concerning attorney's fees, the district court restored the case to the active calendar. The parties subsequently filed motions on the attorney's fees issue, each addressing the applicability of the Supreme Court's then recent decision in *Buckhannon*. On May 28, 2002, the district court issued a written ruling denying UNITE's request for an award of attorney's fees. *See Union of Needletrades, Indus. and Textile Employers, AFL–CIO, CLC v. I.N.S.*, 202 F.Supp.2d 265 (S.D.N.Y.2002).

This timely appeal followed.

## · DISCUSSION

### I. *Standard of Review*

■ We generally review a district court's award of attorney's fees for an abuse of discretion. *See, e.g., Mautner v. Hirsch*, 32 F.3d 37, 39 (2d Cir.1994). "However, where an appellant's contention on appeal regarding an award of attorneys' fees is that the district court made an error of law in granting or denying such an award, the district court's rulings of law are reviewed de novo." *Baker v. Health Mgmt. Sys.*, 264 F.3d 144, 149 (2d Cir. 2001).

### II. *The Application of* Buckhannon *to FOIA's Fee–Shifting Provision*

■ According to the "American Rule," "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). "Courts may reallocate the burdens of litigation, however, when authorized or directed to do so by a statute." *Peterson v. Continental Cas. Co.*, 282 F.3d 112, 119 (2d Cir.2002) (citing *Alyeska Pipeline Serv. Co.*, 421 U.S. at 269–71, 95 S.Ct.

1612). FOIA is one such statute. Pursuant to its fee-shifting provision, a "court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under [FOIA] in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E) (2000).

■ As both parties agree, at the time UNITE commenced this action, courts determining whether a FOIA plaintiff had "substantially prevailed" applied the catalyst theory of recovery. *See Vt. Low Income Advocacy Council v. Usery*, 546 F.2d 509, 513 (2d Cir.1976) (*Vermont Low Income*); *see also Chesapeake Bay Found. v. United States Dep't of Agric.*, 11 F.3d 211, 216 (D.C.Cir.1993), *overruled by Oil, Chem. & Atomic Workers Int'l Union, AFL–CIO v. Dep't of Energy*, 288 F.3d 452 (D.C.Cir.2002) (*Oil, Chem. & Atomic Workers*). Under the catalyst theory, as long as the plaintiff satisfied certain criteria, *see, e.g., Chesapeake Bay Found.*, 11 F.3d at 216, a district court could award attorney's fees even in the absence of a favorable judgment on the merits, *see, e.g., Vermont Low Income*, 546 F.2d at 513 (noting that "a judgment is not an absolute prerequisite" to an award of attorney's fees under FOIA).

One year into this litigation, the Supreme Court issued its decision in *Buckhannon* rejecting the catalyst theory as a basis for an award of fees under the Fair Housing Amendments Act of 1988 (FHAA), 42 U.S.C. § 3601, *et seq.*, and the Americans with Disabilities Act of 1990(ADA), 42 U.S.C. § 12101, *et seq. See Buckhannon*, 532 U.S. at 605, 121 S.Ct. 1835. One of the petitioners in *Buckhannon*, Buckhannon Board and Care Home, Inc. (Buckhannon), operated assisted living homes and had failed a state fire marshall inspection because some of its residents were incapable of "self-preservation" un-

der state law, meaning that they were not capable of moving themselves "from situations involving imminent danger." *Id.* at 600, 121 S.Ct. 1835 (citing W. Va.Code §§ 16–5H–1, 16–5H–2 (1998)). After receiving cease and desist orders requiring that it close its facilities, Buckhannon filed suit on behalf of itself and other similarly situated homes against the state, two state agencies and various individuals. *See id.* at 600–01, 121 S.Ct. 1835. It sought injunctive and declaratory relief, as well as damages, contending that the state's "self-preservation" law violated the ADA and the FHAA. *See id.* at 601, 121 S.Ct. 1835. Shortly after filing the complaint, the petitioners dropped their claim for damages, leaving only their claims for equitable relief. *See id.* at 601 n. 1, 121 S.Ct. 1835. While the case was still in its early stages, the state passed legislation deleting the "self-preservation" requirement. *See id.* at 601, 121 S.Ct. 1835. On the respondents' motion, the district court dismissed the case as moot after concluding that the new legislation had removed the offending provision. *See id.* The petitioners subsequently moved for an award of attorney's fees, arguing that, under the fee-shifting provisions of the ADA and the FHAA, they were the "prevailing parties" because they had achieved the result they sought and their lawsuit had acted as the catalyst for the voluntary change in the respondents' conduct. *See id.* The district court denied the petitioners' motion, and the Fourth Circuit, following an earlier *en banc* decision rejecting the catalyst theory, affirmed in an unpublished, per curiam opinion. *See id.* at 602, 121 S.Ct. 1835 (citing *S–1 & S–2 v. State Bd. of Educ. of N.C.*, 21 F.3d 49, 51 (4th Cir.1994)). Noting that most circuits recognized the validity of the catalyst theory, the Supreme Court granted certiorari to resolve the disagreement. *See id.*

Affirming the Fourth Circuit, the Court rejected the catalyst theory, holding that it was not "a permissible basis for an award of attorney's fees under the [ADA and the FHAA]." *Id.* at 610, 121 S.Ct. 1835. The Court's analysis began by focusing on the term "prevailing party," the legal term of art used by Congress in the ADA, the FHAA and numerous other fee-shifting provisions. *See id.* at 603, 121 S.Ct. 1835. Citing *Black's Law Dictionary,* the Court noted that "prevailing party" was defined as "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded . . .—Also termed *successful party.*" *Id.* (citing *Black's Law Dictionary* 1145 (7th ed.1999)). Noting that it had "never had occasion to decide whether the term 'prevailing party' allows an award of fees under the 'catalyst theory,'" *id.* at 603 n. 5, 121 S.Ct. 1835, the Court undertook a general examination of its decisions addressing awards granted under various fee-shifting provisions, *see id.* at 603–04, 121 S.Ct. 1835. Following this review, the Court stated that its "decisions, taken together, establish that enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." *Id.* at 604, 121 S.Ct. 1835 (citing *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792–93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). The catalyst theory, the Court held, "falls on the other side of the line from these examples" in that it authorizes "an award where there is no judicially sanctioned change in the legal relationship of the parties." *Id.* at 605, 121 S.Ct. 1835. The Court further held that where a plaintiff realizes the objective of its lawsuit without a court-ordered consent decree or a judgment on the merits, a "defendant's voluntary change in conduct . . . lacks the . . . judicial *imprimatur*"

necessary to render the plaintiff a prevailing party. *Id.*

UNITE argues that *"Buckhannon's* holding and rationales ... do not dictate rejection of the FOIA catalyst theory." This position, however, takes too narrow a view of the Court's ruling. Our cases acknowledge that *Buckhannon's* rejection of the catalyst theory extends to more than just the two fee-shifting provisions at issue in that decision. In *New York State Federation of Taxi Drivers v. Westchester County Taxi & Limousine Commission,* 272 F.3d 154 (2d Cir.2001), for instance, we held that "[d]espite the fact that the holding in *Buckhannon* applied to the FHAA and ADA, it is clear that the Supreme Court intends the reasoning of that case to apply to [the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988,] as well." *Id.* at 158. Likewise, in *J.C. v. Regional School District 10, Board of Education,* 278 F.3d 119 (2d Cir.2002), a decision in which we rejected the catalyst theory as a permissible basis for an award of attorney's fees under the Individuals with Disabilities in Education Act (IDEA), 20 U.S.C. §§ 1400 *et seq.,* we recognized that although *"Buckhannon* concerned the fee-shifting provisions of the [ADA and the FHAA], ... the decision expressly signaled its wider applicability." *Id.* at 123.

A number of circuits addressing fee-shifting provisions other than those under consideration in *Buckhannon* have taken a similarly broad view of the Court's decision. *See, e.g., John T. v. Del. County Intermediate Unit,* 318 F.3d 545, 556 (3d Cir.2003) (applying *Buckhannon* to cases brought under the IDEA and noting that *"Buckhannon* heralded its wider applicability—although it dealt only with the fee-shifting provisions of the FHAA and the ADA"); *Richardson v. Miller,* 279 F.3d 1, 4 (1st Cir.2002) ("Although *Buckhannon* applied to [the FHAA and ADA], the

Court specifically noted that fee-shifting provisions of several other statutes, including the [Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988,] should be interpreted consistently."); *Chambers v. Ohio Dep't of Human Servs.,* 273 F.3d 690, 693 (6th Cir.2001) (noting that *Buckhannon* "categorically rejected the catalyst theory as a permissible basis for awarding attorney's fees"); *Perez–Arellano v. Smith,* 279 F.3d 791, 794 (9th Cir.2002) (holding that "the Supreme Court's express rule of decision [in *Buckhannon*] sweeps ... broadly and its reasoning is persuasively applicable to an award of attorney's fees under the [Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A) ]."); *Bennett v. Yoshina,* 259 F.3d 1097, 1100 (9th Cir.2001) ("There can be no doubt that the Court's analysis in *Buckhannon* applies to statutes other than the two at issue in that case."); *Crabill v. Trans Union, L.L.C.,* 259 F.3d 662, 666–67 (7th Cir.2001) (recognizing the Supreme Court's emphasis on "the similarity of most federal fee-shifting statutes" and suggesting that *Buckhannon's* rejection of the catalyst theory applies to the fee-shifting provision contained in the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681t).

Addressing the precise question raised in this appeal, the D.C. Circuit concluded that *Buckhannon's* rejection of the catalyst theory is broad enough to preclude an award of attorney's fees to FOIA plaintiffs who have failed to secure either a judgment on the merits or a court-ordered consent decree. *See Oil, Chem. & Atomic Workers,* 288 F.3d at 456–57. The plaintiff-union in *Oil, Chem. & Atomic Workers* submitted a FOIA request to the United States Enrichment Corporation (USEC) seeking information concerning the effect that privatization of two enrichment plants would have on the union's members. *See id.* at 453. When the USEC refused to provide the requested information, the un-

ion brought a civil action in federal court. *See id.* Following several status conferences before the district court, the parties filed a report stating that "[i]n light of [the USEC's] production of substantial amounts of material responsive to [the union's] claim for relief ..., the action is hereby dismissed." *Id.* at 457. The district court signed the parties' report, which reserved for the union the right to file a request for attorney's fees. *See id.* The union subsequently filed an application for fees, which the district court granted, in part, under FOIA's fee-shifting provision. *See id.* at 453.

The issue on appeal in *Oil, Chem. & Atomic Workers* was whether the Supreme Court's decision in *Buckhannon,* issued while the appeal was pending, applied to FOIA cases. *See id.* Reversing the district court's award, the D.C. Circuit held that it did. *See id.* at 456–57, 459. The court acknowledged that FOIA's use of the "substantially prevailing" language differed "slightly" from the fee provisions at issue in *Buckhannon,* which used the term "prevailing party." *See id.* at 454. That difference notwithstanding, the court "adhere[d] to the proposition ... that eligibility for an award of attorney's fees in a FOIA case should be treated the same as eligibility determinations made under other fee-shifting statutes unless there is some good reason for doing otherwise." *Id.* at 455. Noting that it had "seen nothing to suggest that Congress sought to draw any fine distinction between 'prevailing party' and 'substantially prevail,'" *id.,* the D.C. Circuit held "that in order for plaintiffs in FOIA actions to become eligible for an award of attorney's fees, they must have 'been awarded some relief by [a] court,' either in a judgment on the merits or in a court-ordered consent decree," *id.* at 456–57 (quoting *Buckhannon,* 532 U.S. at 603, 121 S.Ct. 1835). After concluding that the report filed by the parties and signed by the district court constituted neither a decision on the merits nor a court-ordered consent decree, *see id.* at 457–58, the court held that under *Buckhannon,* the union was not entitled to attorney's fees because it did not "substantially prevail." *Id.* at 459.

■ We believe the same result is required here. Less than five months after UNITE filed its complaint seeking an order directing the INS to produce certain information relating to the investigation and raid of Poly–Pak, the INS complied by producing over 1,300 documents. After the parties worked through various disagreements concerning the remaining redacted and allegedly privileged documents, they jointly reported that they had "settled all of the substantive issues in the case" and that the only remaining issue was whether UNITE was entitled to attorney's fees. In light of the parties' report, the district court discontinued the action subject to its being reopened in the event that the parties were unable to reach an agreement on the issue of attorney's fees. The district court *never* granted any relief on the merits, nor was it asked to do so by UNITE. Moreover, UNITE *never* requested that the district court order a consent decree or endorse, or retain jurisdiction over, a settlement agreement. Accordingly, while UNITE may have accomplished the objective it sought to achieve by initiating this FOIA action, its failure to secure either a judgment on the merits or a court-ordered consent decree renders it ineligible for an award of attorney's fees under *Buckhannon.*

■ Several decisions extending *Buckhannon* to fee-shifting provisions not at issue in that case rely on the Supreme Court's statement, following its citation to an appendix listing over 150 fee-shifting provisions, including FOIA's, *see Buckhan-*

*non,* 532 U.S. at 602–03, 121 S.Ct. 1835 (citing *Marek v. Chesny,* 473 U.S. 1, 43–51, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985) (appendix to opinion of Brennan, *J.,* dissenting)), that the Court "[had] interpreted these fee-shifting provisions consistently," *Buckhannon,* 532 U.S. at 603 n. 4, 121 S.Ct. 1835 (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). We do not suggest that *Buckhannon*'s rejection of the catalyst theory necessarily extends to each and every fee-shifting provision listed in the *Marek* appendix. At the same time, however, our cases have acknowledged that the principles that guide our interpretation of certain fee-shifting provisions inform our analysis of other such provisions that use similar language. *See Dague v. City of Burlington,* 935 F.2d 1343, 1357 (2d Cir. 1991), *rev'd in part on other grounds, City of Burlington v. Dague,* 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). In *Dague,* for instance, we observed that the principles governing fee awards under 42 U.S.C. § 1988, which provides for fee awards to a "prevailing party," are applicable to our analysis of other fee-shifting provisions authorizing awards to a "prevailing party" or a "substantially prevailing party" because the language of those provisions is "substantially similar." *Id.* (analyzing the citizen-suit provisions of the Resource Conservation and Recovery Act, 42 U.S.C. § 6972, and the Clean Water Act, 33 U.S.C. § 1365, which allow for an award of fees to "the prevailing party or substantially prevailing party," by reference to cases decided under the Attorney's Civil Rights Fee Awards Act, 42 U.S.C. § 1988). In view of this observation, our holding in *New York State Federation of Taxi Drivers* that *Buckhannon*'s reasoning extends to the fee provision contained in 42 U.S.C. § 1988 supports our reaching a similar result here: *Buckhannon* precludes a fee award to a FOIA plaintiff

whose "lawsuit did not result in a judicially sanctioned change in the legal relationship of the parties." *N.Y. State Fed'n of Taxi Drivers,* 272 F.3d at 158–59.

### III. *UNITE's Other Arguments*

UNITE makes several arguments suggesting that FOIA's language, legislative history and purpose distinguish its fee provision from those under consideration in *Buckhannon* and render *Buckhannon*'s reasoning inapplicable to fee applications made by plaintiffs in FOIA actions. We address these arguments below.

### A. *A Complainant That Has "Substantially Prevailed" Versus a "Prevailing Party"*

UNITE's primary contention on appeal is that a party that "substantially prevails" (or a "substantially prevailing party") under FOIA is necessarily different from a "prevailing party" as that term is construed in *Buckhannon.* Providing selective nonlegal dictionary definitions of the term "substantially," UNITE argues that FOIA's "substantially prevails" language expands the scope of parties who may recover fees to include those who are entitled to recover under the catalyst theory. Several considerations leave us unconvinced.

First, this argument was presented and squarely rejected by the D.C. Circuit in *Oil, Chem. & Atomic Workers. See* 288 F.3d. at 455. Moreover, although *Oil, Chem. & Atomic Workers* is the only federal appellate decision addressing FOIA's "substantially prevails" language in the wake of *Buckhannon,* several post-*Buckhannon* decisions considering similar language in other fee-shifting provisions support the D.C. Circuit's view that the addition of the term "substantially" does not affect the Supreme Court's analysis in *Buckhannon.* Addressing language in

the Resource Conservation and Recovery Act of 1976 that allows for an award of fees to a "prevailing or substantially prevailing party," 42 U.S.C. § 6972(e), the Ninth Circuit held in *Kasza v. Whitman,* 325 F.3d 1178 (9th Cir.2003), that a plaintiff was not a " 'prevailing party' (and thus [could not] be a *substantially* 'prevailing party') because she did not gain by judgment or consent decree a material alteration of the legal relationship of the parties." *Id.* at 1180 (quoting the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6972(e)). In addition, one of the few post-*Buckhannon* cases *upholding* an award of attorney's fees under the catalyst theory acknowledged that the difference between a "prevailing party" and a party that has "substantially prevailed" is "inconsequential." *Loggerhead Turtle v. County Council of Volusia County,* 307 F.3d 1318, 1322 & n. 4 (11th Cir.2002) (upholding a fee award under the catalyst theory where the fee-shifting statute at issue permitted an award of attorney's fees to a party *"whenever* the court determines such award is *appropriate "* (quoting the Endangered Species Act, 16 U.S.C. § 1540(g))).

Finally, we are not at all sure that the nonlegal dictionary definitions of "substantial" offered by UNITE support its argument. Addressing the plain meaning of "substantially" in the context of the ADA, which defines a "disability" as an impairment that *"substantially* limits" one or more major life activities, 42 U.S.C. § 12102(2)(A) (emphasis added), the Supreme Court recently highlighted several definitions of the term "substantially" that undercut UNITE's argument. *See Toyota Motor Mfg., Ky. v. Williams,* 534 U.S. 184, 196–97, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). Among the definitions presented by the Court in *Toyota* was one from Websters Third New International Dictio-

nary, which defined "substantial" as "considerable in amount, value, or worth" and another from Oxford English Dictionary, which defined the term to mean "[o]f ample or considerable amount, quantity, or dimensions." *Id.* (internal quotation marks and citations omitted). In view of these definitions, the Court held that " '[s]ubstantially' in the phrase 'substantially limits' suggests 'considerable' or 'to a large degree.' " *Id.* at 196, 122 S.Ct. 681 (citation omitted). These definitions of "substantial" and the Supreme Court's interpretation of that term indicate that the term "substantially" as used in FOIA's fee-shifting provision alters the *amount* or *degree* of recovery necessary to obtain fees—*not* the *method* or *manner* in which the recovery must be obtained. In rejecting the catalyst theory, the Supreme Court's decision in *Buckhannon* limited the *methods* of recovery that may give rise to an award of fees; it did not change the amount of recovery required. Accordingly, any difference between the term "prevailing party," as analyzed in *Buckhannon,* and the term "substantially prevail[ing]" party, as used in FOIA, is not significant to our analysis.

### B. *FOIA's Legislative History*

UNITE also argues that FOIA's legislative history demonstrates that Congress intended to permit fee awards under the catalyst theory. FOIA's legislative history has been recounted by this Court before. In *Vermont Low Income,* Judge Friendly described Congress' deliberations over the threshold requirement for an award of attorney's fees under FOIA. *See Vermont Low Income,* 546 F.2d at 512–13. The version of the bill originally recommended by the House Committee on Government Operations provided for an award of fees, in the discretion of the court, to a complainant in instances where "the court is-

sues an injunction or order against the Government agency." *Id.* at 512 (internal quotation marks and citation omitted). As passed by the House, however, the bill broadened a party's eligibility for a fee award to cases "in which the United States ... has not prevailed." *Id.* (internal quotation marks and citation omitted). The Senate bill, as Judge Friendly described it, "changed the emphasis" by permitting an assessment of fees in cases where "the complainant has substantially prevailed" and by listing four factors for a court to consider when exercising its discretion to award fees: "the benefit to the public, if any, deriving from the case, the commercial benefit to the complainant and the nature of his interest in the records sought, and whether the government's withholding of the records sought had a reasonable basis in law." *Id.* (internal quotation marks and citation omitted). The Conference Committee's version, which ultimately passed into law, incorporated the "substantially prevailing" standard from the Senate proposal, but eliminated the four criteria discussed above. *See id.* at 513. Based on this legislative record, UNITE maintains that the House's rejection of a version of the bill that awarded fees where "the court issues an injunction or order against the Government agency" demonstrates Congress' intent that a FOIA complainant need not secure judicially sanctioned relief to be eligible for an award of attorney's fees.

While Judge Friendly made a forceful case on this score, we are guided in our view of FOIA's legislative record by the Supreme Court's consideration of a similar legislative history argument in *Buckhannon.* At the petitioners' urging, the *Buckhannon* Court examined the legislative history of the Civil Rights Attorney's Fee Awards Act, 42 U.S.C. § 1988, which, the petitioners argued, supported a broader reading of the term "prevailing party"—

one which encompassed the catalyst theory. *See Buckhannon,* 532 U.S. at 607, 121 S.Ct. 1835.. Taking up this argument, the Court pointed to the House Report to 42 U.S.C. § 1988, which states that "[t]he phrase 'prevailing party' is not intended to be limited to the victor only after entry of a final judgment following a full trial on the merits." *Id.* (quoting H.R.Rep. No. 94–1558, p. 7 (1976)). The Court also referenced the Senate Report, which explains that " 'parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief.' " *Id.* (quoting S.Rep. No. 94–1011, p. 5, (1976), U.S. Code Cong & Admin.News 1976, p. 5912. ). Further, the Court noted that both Reports made explicit reference to an Eighth Circuit decision describing the catalyst theory. *See id.* (citing *Parham v. Southwestern Bell Tel. Co.,* 433 F.2d 421 (8th Cir.1970)).

In spite of this record, the *Buckhannon* Court dismissed the petitioners' argument as "insufficient," concluding that, in view of the "American Rule" that courts may not award fees absent "explicit statutory authority," the legislative history cited was "at best ambiguous as to the availability of the 'catalyst theory' for awarding attorney's fees." *Id.* at 607–08, 121 S.Ct. 1835. The legislative history underlying the passage of FOIA is no more persuasive than that recounted in *Buckhannon.* Indeed, one of the Reports cited in *Buckhannon* explicitly states that the term "prevailing party" was *not* intended to be "limited" to those acquiring a judgment on the merits, yet that did not prevent the Supreme Court from ultimately concluding that some form of judicially sanctioned relief *is* required to support an award of fees. *See id.* at 607, 121 S.Ct. 1835 (citing H.R.Rep. No. 94–1558, p. 7 (1976)). In contrast, none of the Reports in FOIA's legislative

history references awarding fees in the absence of a judgment. *See Oil, Chem. & Atomic Workers,* 288 F.3d at 456. *Buckhannon*'s characterization of what we believe to be a more persuasive legislative record as "ambiguous" and "insufficient" convinces us that the legislative history underlying FOIA is "inconclusive." *Id.*[2]

### C. *Previously Controlling Second Circuit Case Law*

UNITE next argues that because *Buckhannon* did not specifically rule on the propriety of awarding attorney's fees to a FOIA plaintiff who had not obtained judicially sanctioned relief, Second Circuit law approving of such awards in FOIA cases controls this appeal, and requires reversal. UNITE is correct that prior to the Supreme Court's decision in *Buckhannon,* "a judgment [was] not an absolute prerequisite" to an award of attorney's fees under FOIA's fee-shifting provision. *Vermont Low Income,* 546 F.2d at 513. UNITE is also correct that, as a general rule, one panel of this Court cannot overrule a prior decision of another panel. *See, e.g., United States v. King,* 276 F.3d 109, 112 (2d Cir.2002). We have recognized, however, that an exception to this general rule arises where there has been an intervening Supreme Court decision that casts doubt on our controlling precedent. *See, e.g., Boothe v. Hammock,* 605 F.2d 661, 663 (2d Cir.1979). As one of our recent decisions acknowledges, for this exception to apply, the intervening decision need not address the precise issue already decided by our Court. *Cf. Taylor v. Vt. Dep't of Educ.,* 313 F.3d 768, 783–86 (2d Cir.2002) (re-evaluating a prior holding of this Court on the record-access provision of the Family Educational Rights and Privacy Act (FER-

PA), 20 U.S.C. § 1232g(b)(1), in light of an intervening Supreme Court decision that overruled an earlier Second Circuit decision concerning a different non-disclosure provision of FERPA). We believe that *Buckhannon*'s rejection of the catalyst theory and its reasoning supporting that rejection are sufficiently broad to support the conclusion we reach today, our prior holding in *Vermont Low Income* notwithstanding. *See Oil, Chem. & Atomic Workers,* 288 F.3d at 457 ("Because *Buckhannon* controls, the existing law of our circuit must give way.").

UNITE contends that construing *Buckhannon* to preclude fee awards under the catalyst theory in FOIA actions, even though *Buckhannon* addressed only the fee provisions of the ADA and FHAA, implies "a slavish subordination" of our judgment to the "will of higher-court judges." (Citing Richard A. Posner, *The Problems of Jurisprudence* (1990) at 226). UNITE maintains that resolution of the question before us should rest on "an independent analysis of *Buckhannon*'s application to FOIA based on statutory language, history, and purpose." We agree, and we believe that our holding today is the result not just of the Supreme Court's recent decision, but also of (1) our examination of the judicial landscape surrounding the award of attorney's fees in general, *see, e.g., Kasza,* 325 F.3d at 1180, and (2) our independent consideration of FOIA's legislative history. Our assessment of this body of law is undoubtedly affected by *Buckhannon,* a decision in which the Supreme Court disagreed with almost every circuit that had considered the catalyst theory. *See Buckhannon,* 532 U.S. at 621, 121 S.Ct. 1835 (Scalia, *J.,* concurring) (ac-

---

**2.** Further undercutting UNITE's legislative history argument are statements in both the House and Senate reports that suggest that FOIA's fee-shifting provision was modeled af-

ter other such provisions that provided for awards to a "prevailing party." *See Oil, Chem. & Atomic Workers,* 288 F.3d at 456. (citations omitted).

knowledging majority opinion's disagreement "with a 'clear majority' of the Circuits"); *see also id.* at 602 n. 3, 605, 121 S.Ct. 1835. However, our assessment here is also consistent with other decisions addressing the catalyst theory in cases involving fee-shifting provisions not considered in *Buckhannon. See, e.g., Oil, Chem. & Atomic Workers,* 288 F.3d at 456–57; *Crabill,* 259 F.3d at 667 (Posner, *J.*) (suggesting that *Buckhannon* applies to the fee provision contained in the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681t).

D. *The Alleged Negative Effect of Eliminating the FOIA Catalyst Theory*

Finally, in a policy-oriented argument, UNITE predicts that if FOIA plaintiffs are not permitted to qualify for fee awards under the catalyst theory, recalcitrant agencies will be able to avoid such awards by releasing the requested records at the eleventh hour. The petitioners in *Buckhannon* advanced a similar argument, contending that in the absence of the catalyst theory, defendants seeking to avoid an award of attorney's fees would be able to do so by unilaterally mooting an action just prior to judgment. *See Buckhannon,* 532 U.S. at 608, 121 S.Ct. 1835. The Court rejected the petitioners' claim, noting that it was "entirely speculative and unsupported by any empirical evidence." *Id.* We agree and find UNITE's argument on this front unavailing. We would add that this is a policy argument best addressed to Congress.

## CONCLUSION

We have considered UNITE's remaining arguments and find them to be without merit. In light of the foregoing, we hold that UNITE is not entitled to an award of attorney's fees. The judgment of the district court, therefore, is affirmed.

The parties shall bear their own costs.