06-3373-cv
Wojchowski v. Daines

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2006

(Argued: June 28, 2007)                                    Decided: August 2, 2007)

Docket No. 06-3373-cv

MICHAEL WOJCHOWSKI, SR., by his attorney-in-fact, LUCY WOJCHOWSKI, and LUCY WOJCHOWSKI,

*Plaintiffs-Appellants*,

v.

RICHARD F. DAINES, Commissioner, New York State Department of Health, and KELLY A. REED, Commissioner, Monroe County Department of Human and Health Services,[*]

*Defendants-Appellees.*

Before: CABRANES and RAGGI, *Circuit Judges*, and BERMAN,[**] *District Judge.*

Plaintiffs-appellants appeal from a judgment of the United States District Court for the Western District of New York (Michael A. Telesca, *Judge*) dismissing their claim that the process used by New York State to determine the resource allowance of a "community spouse" whose "institutionalized spouse" has applied for Medicaid assistance violates the "antiattachment provision" of the Social Security Act, 42 U.S.C. § 407(a). They accurately point out that our Court squarely decided this issue in *Robbins v. DeBuono*, 218 F.3d 197 (2d Cir. 2000). Defendants-appellees, however, argue that *Robbins* is no longer good law in light of the Supreme Court's more recent decision in *Washington State Department*

---

[*] Pursuant to Fed. R. of App. P. 43(c)(2), Richard F. Daines and Kelly A. Reed are automatically substituted for the prior occupants of their positions, former New York State Department of Health Commissioner Antonia Novello, M.D., and former Monroe County Department of Health and Human Services Commissioner Patricia Stevens.

[**] The Honorable Richard M. Berman, of the United States District Court for the Southern District of New York, sitting by designation.

*of Social & Health Services v. Guardianship Estate of Keffeler*, 537 U.S. 371 (2003).  We conclude that *Robbins*'s approach to the antiattachment provision is inconsistent with *Keffeler* and that, under *Keffeler*'s interpretation of § 407(a), New York's process for determining a community spouse's resource allowance does not impermissibly alienate an institutionalized spouse's Social Security benefits.

Affirmed.

RENÉ H. REIXACH, Woods Oviatt Gilman LLP, Rochester, NY, *for Plaintiffs-Appellants*.

VICTOR PALADINO, Assistant Solicitor General (Eliot Spitzer, Attorney General, Daniel Smirlock, Deputy Solicitor General, *on the brief*), Office of the Attorney General of the State of New York, Albany, NY, *for Defendants-Appellees*.

JOSÉ A. CABRANES, *Circuit Judge*:

This appeal concerns the scope of the "antiattachment provision" of the Social Security Act (the "Act"), 42 U.S.C. § 407(a).  *See Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 379 (2003) (describing § 407(a) as the Act's "antiattachment provision").  Section 407(a) states in relevant part that "none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process."[1]  In *Robbins v. DeBuono*, 218 F.3d 197 (2d Cir. 2000), our Court held that it was a violation of § 407(a) for New York State, when making certain Medicaid eligibility determinations, to attribute the Social Security benefits of an "institutionalized spouse" to his or her "community spouse," because this

---

[1] 42 U.S.C. § 407(a) provides in full:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

2

attribution effectively coerces the couple into using the benefits on behalf of the community spouse.[2] *Id.* at 198-99. In our Court's view, such attribution subjected the institutionalized spouse's Social Security benefits to "other legal process" within the meaning of § 407(a). *See id.* at 200-01. After our decision in *Robbins*, New York stopped attributing the Social Security benefits of institutionalized spouses to community spouses. However, New York reverted to its prior practice after the Supreme Court issued an opinion in *Keffeler*, which discussed at length the meaning of the term "other legal process" in § 407(a).

Plaintiffs-appellants Michael and Lucy Wojchowski contend that *Keffeler* does not undermine our conclusion in *Robbins* that the attribution of an institutionalized spouse's Social Security benefits to a community spouse violates the Act's antiattachment provision. Defendants-appellees the Commissioner of the New York State Department of Health and the Commissioner of the Monroe County Department of Health and Human Services argue that the analysis and outcome in *Robbins* are inconsistent with *Keffeler*'s interpretation of the antiattachment provision. We conclude that *Robbins*'s holding cannot survive *Keffeler*[3] and that New York's attribution of an institutionalized spouse's Social Security benefits to a community spouse does not violate § 407(a).

## BACKGROUND

A. Medicaid Budgeting and New York's "Income-First Policy"

Medicaid, which is jointly funded by the federal and state governments, "is a medical assistance program authorized 'to pay for necessary medical care for those eligible individuals whose income and resources do not allow them to meet the costs of their medical needs.'" *Robbins*, 218 F.3d at 199

---

[2] An "institutionalized spouse" is, with certain exceptions not relevant here, an individual "in a medical institution or nursing facility" who is "married to a spouse who is not in a medical institution or nursing facility." 42 U.S.C. § 1396r-5(h)(1). A "community spouse" is "the spouse of an institutionalized spouse." *Id.* § 1396r-5(h)(2).

[3] In *Robbins*, we also held that the attribution of an institutionalized spouse's Social Security benefits to a community spouse does not violate the "anti-alienation provision" of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1056(d)(1). *See Robbins*, 218 F.3d at 203-04. Our opinion in the instant case does not affect the ERISA holding in *Robbins*.

(quoting *Golf v. N.Y. State Dep't of Soc. Servs.*, 91 N.Y.2d 656, 659 (1998)). The New York State Department of Health ("DOH"), in conjunction with local social services agencies, administers Medicaid in New York.[4] *Id.*

Medicaid covers, *inter alia*, "nursing home care for medically needy older people who become eligible by incurring medical expenses that reduce their monthly income and assets below prescribed levels." *In re Estate of Tomeck*, — N.Y.3d —, 2007 WL 1834785, slip. op. at 2 (June 28, 2007). As part of the Medicaid Catastrophic Coverage Act of 1988 ("MCCA"), Congress established "a complex set of standards governing the allocation of resources between the spouse residing in a nursing home (the institutionalized spouse) and the spouse residing in the community (the community spouse)." *Id.* at 3; *see Wis. Dep't of Health & Family Servs. v. Blumer*, 534 U.S. 473, 477-78 (2002); *Robbins*, 218 F.3d at 199. The purpose of these "spousal impoverishment provisions" was "to protect community spouses from 'pauperization' while preventing financially secure couples from obtaining Medicaid assistance." *Blumer*, 534 U.S. at 480 (quoting H.R. Rep. No. 100-105, pt. 2, at 65 (1987), *as reprinted in* 1988 U.S.C.C.A.N. 857, 888); *see also Robbins*, 218 F.3d at 199; *Tomeck*, slip. op. at 3.

To that end, Congress directed the States to "establish a minimum monthly maintenance needs allowance for each community spouse." 42 U.S.C. § 1396r-5(d)(3); *Blumer*, 534 U.S. at 481; *Robbins*, 218 F.3d at 199; *see also* N.Y. Soc. Serv. Law § 366-c(2)(h) (establishing New York's allowance formula). This "minimum monthly maintenance needs allowance" ("MMMNA") is "an amount deemed sufficient for the community spouse to live at a modest level after the institutionalized spouse becomes eligible for Medicaid, subject to a statutory floor and ceiling." *Tomeck*, slip. op. at 3. Congress also mandated that "[f]or purposes of establishing the institutionalized spouse's Medicaid eligibility, a portion of the couple's assets is reserved for the benefit of the community spouse." *Blumer*, 534 U.S. at

---

[4] For ease of reference, we refer to actions taken by the DOH or local agencies as being performed on behalf of "the State."

4

482 (footnote omitted) (citing 42 U.S.C. § 1396r-5(c)(2)). This reserved share is known as the "community spouse resource allowance" ("CSRA"). 42 U.S.C. § 1396r-5(f)(2); *see also* N.Y. Soc. Serv. Law § 366-c(2)(d) (defining New York's CSRA formula). "All of the institutionalized spouse's countable resources and the community spouse's countable resources exceeding the CSRA may be used to pay for nursing home care, and must be spent down in order for the institutionalized spouse to qualify for Medicaid." *Tomeck*, slip. op. at 4.

"The MCCA provides for a 'fair hearing' mechanism through which a couple may challenge the State's determination of a number of elements that affect eligibility for, or the extent of assistance provided under, Medicaid."[5] *Blumer*, 534 U.S. at 483 (citing 42 U.S.C. § 1396r-5(e)); *see also* N.Y. Soc. Serv. Law § 366-c(8) (setting forth New York's "fair hearing" procedure). As relevant to the instant case, 42 U.S.C. § 1396r-5(e)(2)(C) specifically provides that

> [i]f either [the institutionalized or community] spouse establishes that the [CSRA] (in relation to the amount of income generated by such allowance) is inadequate to raise the community spouse's income to the [MMMNA], there shall be substituted for the [CSRA] under subsection (f)(2) of this section, an amount adequate to provide [the MMMNA].

Thus, in New York, either spouse "can request a 'fair hearing' at which a [DOH] hearing officer may set a [CSRA] above the statutory amount to enable the assets to generate enough income to raise the community spouse's income to the level of the [MMMNA]." *Robbins*, 218 F.3d at 198; *see* N.Y. Soc. Serv. Law § 366-c(8)(C).

"Medicaid benefits may not be withheld from the institutionalized spouse in the event the community spouse declines to make spousal resources available to pay for medical expenses." *Tomeck*,

---

[5] "Fair hearing" is a term of art used to describe a "judicial or administrative hearing conducted in accordance with due process." Black's Law Dictionary 738 (8th ed. 1999). Of course, the parties to a "fair hearing," as in the instant case, may not regard the proceeding as at all "fair" in the ordinary sense of the word. And simply because a statute or regulation sets forth a series of procedures that it deems a "fair hearing" does not guarantee that due process is met. *See, e.g.*, *Goldberg v. Kelly*, 397 U.S. 254, 259-60, 264 (1970) (holding that, "when welfare is discontinued, only a pre-termination evidentiary hearing provides the recipient with procedural due process," notwithstanding the existence of a post-termination "fair hearing").

5

slip. op. at 5 (citing 42 U.S.C. § 1396r-5(c)(3) and N.Y. Soc. Serv. Law §§ 366(3)(a), 366-c(5)(b)). Under New York law, the State may recover from the community spouse the cost of Medicaid assistance provided to the institutionalized spouse, if the community spouse has "sufficient income and resources to provide medical assistance" but such "income and resources . . . are not available . . . because of . . . the refusal or failure of [the community spouse] to provide the necessary care and assistance." N.Y. Soc. Serv. Law § 366(3)(a) (discussing the creation of "an implied contract" between "a responsible relative" and the State in such circumstances). In the support recovery action contemplated by these statutes, the State may "recover the cost of Medicaid benefits paid for the care of the institutionalized spouse to the extent that the community spouse has available resources" above the CSRA. *Comm'r of Dep't of Soc. Servs. of the City of N.Y. v. Bellman*, 672 N.Y.S.2d 298, 300 (App. Div., 1st Dept. 1998); *see also Tomeck*, slip op. at 4 (noting that "the community spouse's countable resources *exceeding the CSRA* may be used to pay for nursing home care" (emphasis added)). Thus, the higher the CSRA, the less the State can subsequently recover from a community spouse in a support recovery action.

New York "applies an 'income first' policy in determining whether a community spouse is entitled to an increase in her [CSRA]." *Robbins*, 218 F.3d at 199. *See generally Blumer*, 534 U.S. at 484 (explaining the difference between "income-first" and "resource-first" policies). "This approach . . . deems or attributes income from the institutionalized spouse to the community spouse. Thus, the CSRA goes up only if the community spouse's monthly income, including any sums that the institutionalized spouse is allowed to provide, still falls short of the MMMNA." *Tomeck*, slip. op. at 6; *see Robbins*, 218 F.3d at 199. "Whether or not the institutionalized spouse contributes his excess income to his spouse, [the State] may sue [the community spouse] to recover the 'excess' assets that [the community spouse] would otherwise use to generate income." *Robbins*, 218 F.3d at 199.

The question presented in the instant case is whether § 407(a) prohibits New York from attributing an institutionalized spouse's Social Security benefits to a community spouse when

6

calculating the community spouse's CSRA.[6] In *Robbins*, we held that application of New York's

income-first policy to Social Security benefits was a violation of § 407(a); subsequent guidance from the

Supreme Court requires us to revisit that holding. *See Boothe v. Hammock*, 605 F.2d 661, 663 (2d Cir.

1979) (stating that our Court was "obliged to reassess" its earlier holdings in light of an intervening

Supreme Court decision).

B.  Factual and Procedural Background of the Instant Case

The following facts are taken from the Wojchowskis' complaint and the documents referred to

therein.  We accept these facts as true and draw all reasonable inferences in the Wojchowskis' favor.

*See, e.g.*, *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) ("In reviewing a motion to

dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, we

accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor

of the non-moving party.").

The Wojchowskis are a married couple living in Monroe County, New York.  At the time this

action was commenced in October 2005, Mr. Wojchowski (the institutionalized spouse for Medicaid

purposes) was 85 years old and resided in a nursing home.  Mrs. Wojchowski (the community spouse

for Medicaid purposes) was 81 years and resided in the couple's marital home.  Mrs. Wojchowski

became her husband's attorney-in-fact pursuant to a durable general power of attorney dated

November 29, 2004.

In December 2004, an application for Medicaid was filed on Mr. Wojchowski's behalf with the

---

[6] Both the Supreme Court and the New York Court of Appeals have held that application of an income-first policy is consistent with the spousal impoverishment provisions of the MCCA.  *See Blumer*, 534 U.S. at 495; *Golf*, 91 N.Y.2d at 658.  Congress has since mandated that all States use an income-first policy.  *See* Deficit Reduction Act of 2005 ("DRA"), Pub. L. No. 109-171, § 6013, 120 Stat. 4, 64 (2006) (codified at 42 U.S.C. § 1396r-5(d)(6)).  We must nevertheless consider whether a state applying an income-first policy violates the antiattachment provision of the Act by attributing Social Security benefits to a community spouse, because the DRA does not expressly indicate whether § 407(a) permits this attribution.  *See* 42 U.S.C. § 407(b) ("No other provision of law . . . may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.").

Division of Social Services ("DSS") of the Monroe County Department of Human and Health Services. Mrs. Wojchowski filed a "spousal refusal statement" with the Medicaid application, indicating that she would not make her assets available for her husband's medical care. The DSS issued a "Notice of Decision" on February 22, 2005. The DSS determined that Mr. Wojchowski was eligible for Medicaid assistance in light of the spousal refusal statement, but that Mrs. Wojchowski had approximately $480,000 of resources in excess of her statutorily-prescribed CSRA, which in 2004 was $92,760.

The Wojchowskis requested a "fair hearing" to increase Mrs. Wojchowski's CSRA. They argued that Mrs. Wojchowski should be permitted to retain all of her assets in order to generate enough investment income to make up the shortfall between her personal monthly income and the applicable MMMNA. Administrative Law Judge ("ALJ") John G. Herriman issued a "Decision After Fair Hearing" on October 13, 2005. ALJ Herriman determined that Mrs. Wojchowski was entitled to an MMMNA of $2319 and that her countable income, after deductions for health insurance premiums, was only $308.59 per month. Applying New York's income-first policy over Mr. Wojchowski's objection, ALJ Herriman then attributed Mr. Wojchowski's Social Security benefits (among other forms of income) to his wife. Plaintiffs allege that with this attribution, Mrs. Wojchowski's income was $952 less than the MMMNA; without this attribution, her income would have been approximately $1900 less than the MMMNA. These calculations led ALJ Herriman to conclude that while Mrs. Wojchowski was entitled to an increase in her CSRA that would generate $952 of income per month, she was not entitled to retain all of her assets. ALJ Herriman remanded the matter to the local social services district to calculate the precise increase. According to the Wojchowskis,

> whatever ultimately might be determined to be the amount of the CSRA increase, it will be about half what it would be if Mr. Wojchowski's Social Security benefits had not been taken into account. In turn, the amount of Mrs. Wojchowski's resources subject to the support claim the DSS could make against her will be inflated by the difference in the CSRA increase

resulting from automatically re-allocating her husband's Social Security. Appellants' Br. 9. In other words, if the State brings a support recovery action against Mrs. Wojchowski, fewer of her assets will be sheltered as her CSRA than would be the case if Mr. Wojchowski's Social Security benefits had not been attributed to her.

The Wojchowskis then commenced this action against defendants, seeking injunctive and declaratory relief. They claimed, *inter alia*, that the attribution of Mr. Wojchowski's Social Security benefits to Mrs. Wojchowski violated § 407(a), because it subjected the benefits to "other legal process." Defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing in relevant part that application of New York's income-first policy to Social Security benefits during a "fair hearing" does not subject those benefits to "other legal process" within the meaning of § 407(a) and thus is not prohibited.

The District Court granted the motion to dismiss. It first observed that our Court in *Robbins* had "held that automatic allocation of an institutionalized spouse's Social Security benefits to the other spouse for purposes of determining the non-institutionalized spouse's income violated Section 407(a)." *Wojchowski v. Novello*, No. 05-CV-6576T, 2006 WL 1888589, at *3 (W.D.N.Y. July 7, 2006). But the District Court then stated that "the rationale upon which *Robbins* was based was undermined by the more recent Supreme Court [d]ecision" in *Keffeler*. *Id*. In light of the "very narrow meaning" given to § 407(a) by *Keffeler*, the District Court concluded that

> [b]ecause the process of allocating Mr. Wojchowski's Social Security benefits to Mrs. Wojchowski for purposes of determining her income does not actually effect a taking of his benefits, nor wrest control over his benefits, the defendants' practice of considering Mr. Wojchowski's benefits in determining Mrs. Wojchowski's income does not constitute the use of "other legal process" as that term is used in the anti-alienation provision of the Social Security Act [*i.e.*, § 407(a)], and therefor[e], does not violate that provision.

*Id*. A final judgment was entered on July 10, 2006. The Wojchowskis timely appealed, arguing that

9

*Robbins*'s holding with respect to the Act's antiattachment provision remains good law in spite of *Keffeler*.

## DISCUSSION

We review *de novo* the District Court's grant of defendants' motion to dismiss for failure to state a claim upon which relief can be granted. *See, e.g.*, *Peay v. Ajello*, 470 F.3d 65, 67 (2d Cir. 2006). Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate where, even if all of the allegations contained in a complaint are true, a claim fails as a matter of law. *See, e.g.*, *Dow Jones & Co., Inc. v. Int'l Sec. Exch., Inc.*, 451 F.3d 295, 308 (2d Cir. 2006).

"While 'as a general rule, one panel of this Court cannot overrule a prior decision of another panel[,] . . . an exception to this general rule arises where there has been an intervening Supreme Court decision that casts doubt on our controlling precedent.'" *Meacham v. Knolls Atomic Power Lab.*, 461 F.3d 134, 141 (2d Cir. 2006) (alteration and ellipsis in original) (quoting *Union of Needletrades, Indus. & Textile Employees v. INS*, 336 F.3d 200, 210 (2d Cir. 2003)). Moreover, "the intervening decision need not address the precise issue already decided by our Court." *Union of Needletrades, Indus. & Textile Employees*, 336 F.3d at 210. We agree with the District Court that our holding in *Robbins* was based on an interpretation of the Social Security Act's antiattachment provision that is inconsistent with the Supreme Court's reading of § 407(a) in *Keffeler*. We therefore conclude that (1) *Robbins*'s holding concerning the scope of § 407(a) is no longer good law and (2) under *Keffeler*, New York's income-first policy as applied to Social Security benefits does not violate § 407(a).

A.  *Robbins*

In *Robbins*, our Court began its analysis by noting that application of New York's income-first policy "clearly did not execute on, levy, attach, or garnish [the institutionalized spouse's] Social Security benefits." 218 F.3d at 200. The dispositive question, therefore, was whether the benefits were "subject to . . . other legal process" within the meaning of § 407(a). *See id.* at 201. The Court set forth the

10

following principles to guide its consideration of this question:

> We have employed an "expansive definition of 'legal process,'" *Kriegbaum v. Katz*, 909 F.2d 70, 74 (2d Cir. 1990), which "embrace[s] not only the use of formal legal machinery but also resort to express or implied threats and sanctions,'" *Fetterusso v. State of New York*, 898 F.2d 322, 327 (2d Cir. 1990).

*Id.*

Our Court then concluded that New York's application of its income-first policy to Social Security benefits violated § 407(a) because (1) it constituted a form of "administrative coercion" that limited a Social Security recipient's discretionary authority over how to spend the benefits and (2) there existed the prospect of a "fair hearing" and the threat of a support recovery action to give this coercion effect. *See Robbins*, 218 F.3d at 200-02. We found that the policy was coercive because it effectively compelled the community spouse (acting as attorney-in-fact for the institutionalized spouse) to spend the institutionalized spouse's Social Security benefits on herself, rather than on the institutionalized spouse's needs:

> [The community spouse], who has [the institutionalized spouse's] power of attorney, has control over his check. If she pays over [his] Social Security benefits for his current care rather than applying them to her own needs, her future will be jeopardized because the DSS will sue to obtain the assets she will need for her support in the future. . . . [T]he effect of the State [policy] in question is to force the [attorney-in-fact] to exercise that discretion in favor of herself.

*See id.* at 202 (fifth and sixth alterations in the original) (internal quotation marks omitted).[7] We further found that, even though the plaintiffs in *Robbins* had not requested a "fair hearing," the prospect of a

---

[7] In reaching the conclusion that such a limitation on the community spouse's discretion was impermissible under § 407(a), our Court relied on what it referred to as "[t]he seminal case in this circuit on deeming or attributing Social Security benefits"—*Johnson v. Harder*, 383 F. Supp. 174 (D. Conn. 1974), *aff'd*, 512 F.2d 1188 (2d Cir. 1975). *See Robbins*, 218 F.3d at 201-02. *Johnson* involved Connecticut's policy of attributing to a parent a portion of a child's Social Security benefits, received by the parent as representative payee for the child, for purposes of calculating the family's welfare benefits. The District Court concluded that the coercive effect of the policy violated the "Social Security statute and regulations," which "required a representative payee to use her child's benefits only for the benefit of the child." *Robbins*, 218 F.3d at 201 (citing *Johnson*, 373 F. Supp. at 179-82). We issued an oral order and brief *per curiam* opinion affirming the District Court's judgment. *See Johnson*, 512 F.2d at 1188-89. Although "*Johnson* explicitly dealt with Social Security regulations not at issue here," *Robbins*, 218 F.3d at 201, our oral order (incorporated into the *per curiam* opinion in a footnote) did refer to *Philpott v. Essex County Welfare Board*, 409 U.S. 413 (1973), a Supreme Court case that involved § 407(a). *See Robbins*, 218 F.3d at 202 (citing *Johnson*, 512 F.2d at 203 n.2).

"fair hearing" and the threat of a support recovery action sufficed to establish "legal process" under

§ 407(a):

> [T]he use of express or implied threats falls within the meaning of "legal process" for purposes of Section 407.  Because New York's income-first policy, which is implemented both during the fair hearing process and through the express threat of a lawsuit, constitutes an explicit threat to use "legal process" against a community spouse who refuses to expend her husband's social security benefits on her own needs, and because threats—implicit or explicit—fall within our definition of "legal process," we hold that the income-first policy as applied to Social Security benefits violates Section 407.

*Id.* (citing *Fetterusso*, 898 F.2d at 327).

B.  *Keffeler*

In *Keffeler*, decided almost three years after *Robbins*, the Supreme Court considered whether it

was a violation of § 407(a) for Washington State to use the Social Security benefits of children for

whom it was representative payee to reimburse itself for some of its initial expenditures in providing

foster care.  *See Keffeler*, 537 U.S. at 375.  The Court first stated that the specific processes mentioned in

§ 407(a)—execution, levy, attachment, and garnishment—are "legal terms of art refer[ring] to formal

procedures by which one person gains a degree of control over property otherwise subject to the

control over another, and generally involve some form of judicial authorization."  *Id.* at 383.  Although

the State, "in the abstract," gained control of the children's benefits using legal process (in being

appointed the children's representative payee and making claims against accounts kept by the State

Treasurer), "[t]he statute . . . uses the term 'other legal process' far more restrictively."  *Id.* at 383-84.

Applying the interpretive canons of *noscitur a sociis* and *ejusdem generis*,[8] the Court held that "other

legal process" must be "construed to embrace only objects similar in nature to those objects

---

[8] "The traditional canon of construction, *noscitur a socciis*, dictates that words grouped in a list should be given related meaning."  *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 36 (1990) (internal quotation marks omitted).  *Ejusdem generis* is "the statutory canon that [w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words."  *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114-15 (2001) (alteration in original) (internal quotation marks omitted).

enumerated by the preceding specific words." *Id.* at 384 (internal quotation marks omitted). Thus, explained the Court,

> "other legal process" should be understood to be process much like the processes of execution, levy, attachment, and garnishment, and at a minimum, would seem to require utilization of some judicial or quasi-judicial mechanism, though not necessarily an elaborate one, by which control over property passes from one person to another in order to discharge or secure discharge of an allegedly existing or anticipated liability.

*Id.* at 385.

The Court then discussed why, "[o]n this restrictive understanding of [the statutory term] 'other legal process,'" the State's use of the children's Social Security benefits did not violate § 407(a). *Id.* at 386. First, "whereas the object of the processes specifically named [*i.e.*, execution, attachment, levy, and garnishment] is to discharge, or secure discharge of, some enforceable obligation, the State has no enforceable claim against its foster children." *Id.* Second, "although execution, levy, attachment, and garnishment typically involve the exercise of some sort of judicial or quasi-judicial authority to gain control over another's property, the [State's] reimbursement scheme operates on funds already in the [State's] possession and control, held on terms that allow the reimbursement." *Id.* The Court concluded that two earlier decisions involving § 407(a), *Philpott v. Essex County Welfare Board*, 409 U.S. 413 (1973), and *Bennett v. Arkansas*, 485 U.S. 395 (1988) (*per curiam*), did not require a contrary result because both cases "involved judicial actions in which a State sought to attach a beneficiary's Social Security benefits as reimbursement for the costs of the beneficiary's care and maintenance"—"forms of legal process expressly prohibited by § 407(a)." *Id.* at 388.

C.  *Robbins* Is Inconsistent with *Keffeler*

In *Binder & Binder PC v. Barnhart*, 399 F.3d 128 (2d Cir. 2005), we observed that *Keffeler* "subtly disturbed the law of this Circuit." *Id.* at 134 (contrasting the "restrictive" reading of § 407(a) in *Keffeler* with the "expansive" reading of the statute in *Robbins*). We had no further occasion to

13

comment on the nature of this disturbance because we found that remand was necessary to allow the District Court to resolve a jurisdictional issue in the first instance. *See id.* at 133. However, we stated that, upon remand, the District Court was free to revisit its earlier conclusion that an attorney charging lien is "legal process" under the Act's antiattachment provision "in light of *Keffeler*." *Id.* at 130, 134. We are now required to address the question (raised but not answered in *Binder & Binder*) of the extent to which *Keffeler* disturbs controlling law in our Circuit. In doing so, we conclude that, although *Keffeler*'s effect on our Court's precedent may be "subtl[e]," it is nevertheless fundamental and requires us to conclude that *Robbins* is no longer good law.

The core of *Keffeler*'s holding is that State practices or policies violate § 407(a) only if they are "similar in nature" to execution, levy, attachment, and garnishment. *Keffeler*, 537 U.S. at 384. Three essential characteristics define an impermissible "legal process": (1) the process is "judicial or quasi-judicial"; (2) the process transfers "control of property . . . from one person to another"; and (3) the process is applied "in order to discharge or secure discharge of an allegedly existing or anticipated liability." *Id.* at 385. *Robbins*, however, proceeded under the assumption that "other legal process" must be interpreted broadly. *See Robbins*, 318 F.3d at 201 (noting that "[w]e have employed an expansive definition of legal process" (internal quotation marks omitted)). It did not analyze whether New York's income-first policy as applied to Social Security benefits resembles the other legal processes specifically enumerated in the statute. Instead, our Court in *Robbins* determined that the antiattachment provision prohibits not merely the transfer of control over property, but also indirect limitations imposed on an individual's discretionary power to use his or her property. *See Robbins*, 218 F.3d at 201-02. Thus, our reading of § 407(a) in *Robbins* is inconsistent with *Keffeler*, and we must revisit the question of whether New York's reinstated income-first policy violates the antiattachment provision under the interpretation set forth by the Supreme Court.

In attempting to limit *Keffeler*'s effect on *Robbins*, *see* Appellants' Br. 12-16, the Wojchowskis

rely heavily on reasoning in a now-overturned decision by the New York Appellate Division. *See In re Estate of Tomeck*, 811 N.Y.S.2d 790, 793-94 (N.Y. App. Div., 3d Dep't 2006), *rev'd*, — N.Y.3d —, 2007 WL 1834785 (June 28, 2007). The Appellate Division reasoned that *Keffeler* was irrelevant to *Robbins* because "in *Keffeler* the benefits were applied to cover the cost of care of the actual Social Security beneficiary." *Id.* at 794. In other words, the Appellate Division seems to have regarded *Keffeler* as doing nothing more than permitting a representative payee to use Social Security benefits in the beneficiary's best interests. Yet this analysis simply ignores the Supreme Court's emphasis on interpreting "other legal process" in light of the surrounding language in the statute. Whether some state action falls within the statute's use of the term "other legal process" depends on the action's similarity to execution, attachment, levy, and garnishment, not on who ultimately benefits from the action. We therefore disagree with the Appellate Division's reasoning in *Tomeck*. As it happens, New York's highest court—the New York Court of Appeals—also disagreed with the Appellate Division, modifying (though in effect reversing) the Wojchowskis' strongest authority in support of their position. *See Tomeck*, slip. op. at 21-22.

## D. Under *Keffeler*, New York's Income-First Policy Does Not Subject An Institutionalized Spouse's Social Security Benefits to Legal Process Within the Meaning of § 407(a)

We conclude, in agreement with the recent decision of the New York Court of Appeals in *Tomeck*, that New York's income-first policy does not violate § 407(a). *See Tomeck*, slip op. at 19-22.[9]

Although the attribution of an institutionalized spouse's Social Security benefits to a community spouse during a "fair hearing" may qualify as a "judicial or quasi-judicial mechanism," *Keffeler*, 537 U.S. at 385, such attribution neither transfers "control of [the benefits] . . . from one person to another" nor mandates that the benefits be used "to discharge or secure discharge of an

---

[9] Although we find much of the reasoning in *Tomeck* to be persuasive, we are, of course, not bound by a state court's interpretation of federal law. *See United States v. Montana*, 134 F.2d 194, 196 (9th Cir. 1943); *see also Gart v. Cole*, 263 F.2d 244, 248 (2d. Cir. 1959) (Clark, C.J.) (explaining that state court decisions involving federal law do not have *stare decisis* effect, even though they might support *res judicata*).

15

allegedly existing or anticipated liability," *id.* Unlike an individual whose property is subject to execution, attachment, levy, or garnishment, the institutionalized spouse (or his attorney-in-fact) ultimately retains the choice to use his Social Security benefits to help support the community spouse or to spend them otherwise. The "administrative coercion" described in *Robbins* may cabin the discretion of an institutionalized spouse to spend his Social Security benefits as freely as he wishes, *see* 218 F.3d at 201-202, but it does not shift control over the benefits to someone else, *see Tomeck*, slip op. at 20-21. And unlike execution, attachment, levy, or garnishment, New York's income-first policy is not a mechanism designed to ensure that a judgment will be satisfied by the institutionalized spouse's Social Security benefits. The attribution occurs whenever a community spouse seeks an increase in her CSRA, regardless of whether she has filed a spousal refusal statement and might be liable in a support recovery action brought by the State. "It is essentially a budgeting methodology," *see Tomeck*, slip op. at 20, not a guarantee that the State will get paid.[10]

In short, the attribution of an institutionalized spouse's Social Security benefits to a community spouse during a "fair hearing" is not "similar in nature" to the other legal processes listed in the antiattachment provision of the Act. Thus, under *Keffeler*, New York's income-first policy does not violate § 407(a).

**CONCLUSION**

For the reasons set forth above, we conclude that *Robbins* is no longer good law, and we hold that New York's income-first policy as applied to Social Security benefits during a "fair hearing" does not violate § 407(a). The judgment of the District Court is therefore **AFFIRMED**.

---

[10] We need not decide whether a state's effort to attach an institutionalized spouse's Social Security benefits in order to collect on a judgment against a community spouse would be permitted under § 407(a), although such an attempt would appear to be foreclosed by the plain language of § 407(a). *See Keffeler*, 537 U.S. at 388 (noting that "judicial actions in which a state sought to attach a beneficiary's Social Security benefits as reimbursement for the costs of the beneficiary's care and maintenance" are "forms of legal process expressly prohibited by § 407(a)").