**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2008

(Argued: December 4, 2008                    Decided: June 9, 2009)

Docket No. 07-3527-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

PENSION COMMITTEE OF THE UNIVERSITY OF MONTREAL PENSION PLAN, THE ALTAR FUND, ARIES TRADING, LTD., THE ARROWSMITH FUND LTD., AVISON COMPANY S.A., BANCO NOMINEES (I.O.M.) LIMITED, BANK OF BERMUDA (LUXEMBOURG), S.A., now called HSBC Security Services (Luxembourg) S.A., on behalf of Liberty Ermitage North American Absolute Fund Ltd., BANQUE PRIVEE EDMOND DE ROTHSCHILD EUROPE, CACEIS BANK LUXEMBOURG, as assignee of Banque Privee Edmond De Rothschild Europe/Isofin f/k/a Credit Agricole Investor Services Bank Luxembourg, JOHN G. BARRIE, JR. IRA, an individual retirement account ("IRA") held on behalf of John G. Barrie, Jr., BASE FORCE, LTD., BOMBARDIER TRUST (CANADA), as agent of the administrators of the pension funds of Bombardier Inc. whose assets are collectively invested in the Bombardier Trust (Canada) (Foreign Assets) Fund, THE BOMBARDIER TRUST (UK), THE BOMBARDIER TRUST (U.S.) MASTER TRUST, CEDAR FUND, CLEARWATER COMMERCIAL ENTERPRISES, INC., COMMONFUND GLOBAL HEDGED PARTNERS, LLC, CONDOR ALTERNATIVE FUND, THE CORBETT FAMILY CHARITABLE FOUNDATION INC., THE CORONATION INTERNATIONAL ACTIVE FUND OF FUNDS, FORTIS GLOBAL CUSTODY MANAGEMENT AND TRUSTEE SERVICES (IRELAND) LIMITED as trustee for Coronation Universal Fund, THE DEVON TRUST, DIRMICA INVESTMENT LTD., DIVERSIFIED CAPITAL MANAGEMENT LTD., MELLON BANK, N.A., as Trustee for the Dominion Resources Inc. Master Trust, ALAIN DUNAND, ETHOS INVESTMENTS LTD., FIRST TRUST CORP., as Trustee for the benefit of Paul J. Simon, Shirley A. Simon and Joseph Cueter, FONDATION LUCIE ET ANDRE CHAGNON, ANDRE CHAGNON, SOJECCI II LTEE., FONDATION LILLA, GOULAM INVESTMENTS INC., GT

1

ALPHA, CHRISTA GUNTER, HERMES TRADING LTD., HSBC PRIVATE BANK (SUISSE) SA, formerly known as HSBC Republic (Suisse) SA, DEFINED BENEFIT PLAN FOR HUNNICUTT & CO., INC., IRA, for the benefit of William Hunnicut VFTC as Custodian, THE ISRAEL HENRY BEREN CHARITABLE TRUST, JOYCE SINCLAIR SPOUSAL TRUST, KREDEITBANK LUXEMBOURG, A/C SPECIAL OPPORTUNITIES FUND, KUWAIT AND MIDDLE EAST FINANCIAL INVESTMENT COMPANY, LA COMPAGNIE FINANCIERE EDMOND DE ROTHSCHILD BANQUE, CECILE LESCOAT, LGT BANK IN LIECHTENSTEIN AG, L.H. LOGARITHM HOLDINGS SA, LIVSFORSLKRINGSSELSKAPET NORDEA LIV NORGE AS, MADISON TEXTILES, LTD., MAESTRO TRADING, INC., MIRELIS INVESTRUST SA, VITTORIO MOSCA, THE MORTON MEYERSON FAMILY FOUNDATION, THE 1999 MEYERSON CHARITABLE REMAINDER TRUST, MULTIVALOR INVEST INC., NATIONAL BANK OF CANADA, NEMROD LEVERAGED HOLDINGS LTD., NOBILIS S.A., SUZANNE FONTAN S.C.A., HALINVEST SARL, DELPHI GLOBAL LIMITED, JOAKIM LEHMKUHL, ISCANDAR INTERNATIONAL S.A., f/k/a Simisa International S.A., LABISCOUTI TRUST, KIKOUSU TRUST, OKABENA MARKETABLE ALTERNATIVES FUND, LLC, THE PENSION COMMITEE OF REGIME DES RENTES DU MOUVEMENT DESJARDINS, ANNE-CHANTAL PIGELET, PICTET & CIE BANQUIERS, STEPHEN GROSS, IRVING TEITELBAUM,  LAURENCE LEWIN, in their capacities as the trustees of RCA in Trust, THE PENSION COMMITTEE OF THE PENSION PLAN FOR THE REGIME de RETRAITE DE LA CORPORATION DE L`ECOLE POLYTECHNIQUE, ROTHSCHILD GESTION, SATNAM INVESTMENTS LTD., SEVEN SEAS PORTFOLIO A LIMITED, SIGNET MULTI-MANAGER INC., UEB (UNITED EUROPEAN BANK) GENEVA (SWITZERLAND), SIL NOMINEES LIMITED, SPGP (Societe Privee de Gestion de Patrimoine), JOANN ST. GERMAIN, THE STAFFORD FUND, LTD., successor to the Stafford Opportunity Fund, Ltd., STARVEST FUNDS, LTD., THE TAURUS FUND, Successor-in-Interest to Turkos Seventeen Limited, TEAM HAAS USA, LTD., TRENDTRUST SA, JAMES VAUGHAN, VENERE INVESTMENTS LIMITED, VIDACOS NOMINEES LIMITED, WESTWIND FOUNDATION HOLDINGS LTD., WYATT INCORPORATED EMPLOYEES PROFIT SHARING PLAN, 171212 CANADA, INC.,  AIS HOLDINGS SERIES TRUST II, COMMERZBANK GLOBAL ALTERNATIVE LIMITED, COMMERZBANK ALTERNATIVE STATEGIES-GLOBAL HEDGE, VESTA FORSIKRING AS, FUND NOMINEES LTD., ORAN LIMITED and ABERDEEN INVESTMENTS LTD.,

*Plaintiffs-Appellant*s,

v.

BANC OF AMERICA SECURITIES LLC,

   *Defendant-Appellee*,

CITCO FUND SERVICES (CURACAO), N.V., THE CITCO GROUP LIMITED, KIERAN CONROY, DECLAN QUILLIGAN, ANTHONY STOCKS, PRICEWATERHOUSECOOPERS (NETHERLANDS ANTILLES), INTERNATIONAL FUND SERVICES (IRELAND) LIMITED, RICHARD GEIST, JOHN W. BENDALL, JR. and INTER CARIBBEAN SERVICES LIMITED,

   *Defendants*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Before: LEVAL and B.D. PARKER, *Circuit Judges*.[1]

  Plaintiffs appeal from the judgment of the United States District Court for the Southern District of New York (Scheindlin, *J.*) dismissing without leave to replead Plaintiffs' claims against Banc of America Securities LLC, which allege that the Defendant aided and abetted fraud and breaches of fiduciary duty committed by the managers of a hedge fund in which Plaintiffs were investors and for which the Defendant served as prime broker. Because Plaintiffs sufficiently pleaded that Defendant's actions proximately caused the Plaintiffs' losses, the Court of Appeals (Leval, *J.*) vacates and remands.

---

[1] The Honorable Rosemary S. Pooler, who was originally scheduled to hear this case, heard argument but subsequently recused herself and did not participate in the decision. The decision announced in this opinion has been reached by this panel's remaining two judges pursuant to Local Rule § 0.14(b).

Peter K. Vigeland, Wilmer Cutler Pickering Hale and Dorr LLP, New York, New York, (Dawn M. Wilson, on the brief), for *Defendant-Appellee*.

Scott M. Berman, Friedman Kaplan Seiler & Adelman LLP, New York, New York, (Anne E. Beaumont, Amy C. Brown, on the brief), for *Plaintiffs-Appellant*s.

LEVAL, *Circuit Judge*:

Plaintiffs appeal from the judgment of the United States District Court for the Southern District of New York (Scheindlin, *J.*) dismissing their claims against Banc of America Securities LLC ("BAS"), without leave to replead, for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Plaintiffs were investors in two hedge funds based in the British Virgin Islands, Lancer Offshore, Inc. and OmniFund Ltd. ("the Funds"). They brought this action to recover losses they suffered on the liquidation of the Funds. Plaintiffs alleged that their losses resulted from frauds committed by Michael Lauer, who managed the Funds through Lancer Management Group, LLC ("Lancer Management").

Plaintiffs' claims against BAS allege that, in its role as the prime broker for the Funds, BAS aided and abetted the frauds and breaches of fiduciary duty committed by Lauer and Lancer Management. The district court dismissed the claims, ruling that Plaintiffs failed to satisfy their burden of pleading proximate causation for their losses. We disagree. The complaint includes allegations that BAS knowingly and substantially assisted Lauer and Lancer Management in

4

deceiving Plaintiffs as to the net asset values of the Funds by falsifying the values of the Funds' holdings on Position Reports, which BAS knew would be relied upon by the Funds' auditor and administrators in calculating and verifying the Funds' net asset values ("NAVs"). It alleges further that the Plaintiffs "reasonably relied upon the [false] representations regarding the Funds' NAVs [net asset values] . . . in deciding to invest in and/or remain invested in the Funds," and that the falsely inflated net asset values were used to justify the payment of fees to Lauer, Lancer Management, and others, which drained the assets of the Funds. In our view, the complaint sufficiently pleaded that BAS's actions proximately caused the Plaintiffs' losses.

## BACKGROUND

The allegations of the Second Amended Complaint (the "complaint"), which in the adjudication of a motion to dismiss under Rule 12(b)(6) must be accepted as true, drawing all inferences from the pleaded facts in Plaintiffs' favor, *Wojchowski v. Daines*, 498 F.3d 99, 104 (2d Cir. 2007), asserted the following facts:

### The Allegations of the Complaint

### 1.    Lauer, Lancer Management, and the Funds

Lauer was the founder, manager and sole shareholder of Lancer Management, which was the Funds' investment manager. Lauer and Lancer Management were responsible for all investment decisions for the Funds. Lancer Management managed the Funds in exchange for fees, which were based on the Funds' NAVs. Lauer and Lancer Management solicited investors in the Funds through personal contacts, third-party marketers or finders, and letters and other

mailings, marketing materials, newsletters and private placement memoranda ("PPMs").

The PPMs represented that the majority of the Funds' assets would be invested in common stocks traded on the New York Stock Exchange, the American Stock Exchange or in the U.S. over-the-counter market. However, Lauer and Lancer Management caused the Funds to pursue an increasingly risky strategy, investing the Funds' assets in restricted (and thus not freely marketable) shares, warrants, and non-equity investments of a small number of "micro-cap and small-cap companies . . . many of [which] were not publicly traded at all." The majority of the securities in which the Funds invested were not listed on any exchange and were quoted, if at all, on the Over-the-Counter Bulletin Board and/or pink sheets.

**2. The Fraud and Breaches of Fiduciary Duty of Lauer and Lancer Management**

The PPMs provided that the NAVs of the Funds would be determined based on the market values of the securities held by the Funds. Specifically, the PPMs provided that listed or quoted securities were to "be valued at their last sales price on the date of determination." The PPMs also provided that listed or quoted securities not sold on the date of determination as well as unlisted securities were to "be valued at the mean between the 'bid' and 'asked' prices" of the most recent date on which such prices were quoted, and if no quotes had been in the past 15 business days, then at a valuation assigned by the Board of Directors. The PPMs also contained a caveat that, in the event the directors determined that the listed valuation method did not represent its market value, the directors would value the securities.

As early as March 2000, the Funds began losing money on a massive scale. To hide the Funds' losses and show increasing NAVs, Lauer and Lancer Management embarked on a scheme to manipulate and inflate their valuation of the securities held by the Funds to the extent of hundreds of millions of dollars: Lauer and Lancer Management purchased for the Funds substantial and sometimes controlling stakes in companies whose shares were thinly-traded on the open market. The Funds' purchases were made in private transactions; they did not involve free-trading common stock, but rather securities not traded on the open market. Prior to the end of the Funds' reporting periods, Lauer and Lancer Management would purchase small amounts of the unrestricted, free-trading stock of these companies in such a manner as to drive up the "market price" of those shares. They would then improperly assign these artificially inflated values to the Funds' restricted holdings, thereby generating the appearance of large paper profits, and triggering payment of larger fees to Lauer and Lancer Management.

These false inflated valuations were used in calculating the Funds' NAVs, and the false NAVs were disseminated to investors each month and used to prepare the Funds' audited financial statements. Lancer Offshore's annual reports for 2000, 2002, and 2003 also included fraudulent NAV figures. The fraudulent NAV statements and audit reports were intended to and did induce Plaintiffs to invest, and remain invested, in the Funds and to artificially and improperly inflate the Fund management, incentive, and administrative fees, thereby draining the Funds' remaining assets.

Lauer and Lancer Management owed fiduciary duties to Plaintiffs as a result of Lancer

Management's role as the Funds' investment manager.  As a result, the scheme in which Lauer and Lancer Management misrepresented the nature and value of the securities in the Funds' portfolios constituted a breach of their fiduciary duty in addition to fraud.

**2.      Alleged Role of BAS**

As the Funds' prime broker, BAS cleared and settled trades, provided portfolio management services, and served as the central custodian for some of the securities held by the Funds.  BAS received a commission on each of the trades it cleared and settled.  Because Lancer Management executed a high volume of trades through BAS and therefore generated substantial commissions for the bank, BAS provided Lauer with substantial goods and services, such as funding construction of, paying rent on, and providing the infrastructure for Lancer Management's Park Avenue office space.

Each month, BAS prepared monthly account statements ("Account Statements"), which purported to reflect the value of the securities held in its custody on behalf of the Funds.  In order to collect the valuation information needed to generate account information, BAS received an electronic data feed from one or more third-party data providers who, in turn, obtained market prices from various securities exchanges and market makers.

BAS also permitted Lauer and Lancer Management to access reports from its computer system through a website called www.primebroker.com.  Upon request from Lauer and Lancer Management, BAS periodically posted reports generated by BAS's computer system on its website.  Using logins and passwords provided by BAS, Lauer and Lancer Management were able

to access the BAS website on a "read-only" basis and view, download and print various reports posted by BAS, including Position Reports, which purported to show the Funds' holdings and the values of those holdings. The Position Reports were the only documents in existence that listed and depicted the values of both the Fund positions in BAS's custody and those held "away" from BAS.

The Position Reports contained BAS's name at the top of each page. When downloaded and printed, the Position Reports contained no disclaimer or other marking to suggest that they were anything other than official documents prepared by BAS and bearing its imprimatur. BAS also gave the Funds' service providers access to the BAS website so that they could view, download, and print Position Reports for the Funds.

Lauer and Lancer Management used Letters of Authorization ("LOAs") both to instruct BAS to transfer money for the purchase of securities and to instruct BAS how to input valuations and other information about the securities in the Funds' portfolios.

David Newman was employed by BAS as the account representative for the Funds from approximately March 1999 to August 2000. In August 2000, Newman left BAS to work for Lancer Management. Newman had not been a trader at BAS. At Lancer Management, however, Newman was given responsibility for communicating virtually all of the Funds' trade and valuation information to BAS and for otherwise interfacing with BAS. In addition to working together at Lancer Management, Newman and Lauer collaborated as movie producers.

Andrew Pennecke is a Vice President of Prime Brokerage at BAS who became the account

representative for the Funds in approximately August 2000, when Newman left BAS. Pennecke obtained his NASD Series 7 license in or around March 2000. In order to obtain this license, a candidate must pass an examination testing his knowledge of a variety of subjects, including the taking and verification of purchase and sale instructions from customers. Pennecke also received "special thanks" in the credits of a number of Newman's movies.

Roman Krawciw is a Managing Director at BAS who has served as the Operations Director for Prime Brokerage Services since April 1995. In addition to a Series 7 license, Krawciw holds a NASD Series 24 license, which permits him to supervise others. To obtain this license, Krawciw was required to pass an examination that tested his proficiency in subjects such as supervision of employees and brokerage office operations. Krawciw also supervised both Pennecke and Newman in their handling of the Lancer Management accounts. He reviewed and approved the majority of the LOAs processed by Pennecke and Newman.

BAS, according to the allegations of the complaint, participated and directly assisted in Lauer and Lancer Management's fraud by presenting false values of the Funds' holdings on the Position Reports at the request of Lauer and Lancer Management with actual knowledge that the information being supplied by Lauer and Lancer Management was false and was being used to mislead investors about the Funds' condition and performance. The Position Reports misrepresented the values of the Funds' holdings in at least five ways: (1) they overvalued unregistered warrants; (2) they valued securities at values higher than the last quoted public price for the shares; (3) they reported unrealistic and misleading increases in the values of unregistered

10

shares and unregistered warrants; (4) they depicted unregistered shares and warrants which could not be publicly traded as registered, free-trading shares; and (5) they valued unregistered shares at the last quoted public price for the registered shares (although their unmarketable status necessarily gave them a lower value than otherwise identical marketable shares).

The complaint cites three examples of BAS's participation in Lauer and Lancer Management's fraud. In the first example, in January 2003, Pennecke, at Newman's request, retroactively changed the value of 3.5 million of warrants of XtraCard Corp., f/k/a Nu-D-Zine, Inc. ("XtraCard" or "Nu-D-Zine"), which the Funds had received at no cost on December 16, 2002 to almost $4 per share as of December 31, 2002. Specifically, in a January 8, 2003 e mail, Newman asked Pennecke to enter the following data into the BAS website:

NEW WARRANT - XTRACARD CORP - XTRDWT

By (sic) 3,500,000 XTRDWT @ 0.00 12/16/02

PRICE @ $3.97 FOR 12/31

Pennecke followed Newman's instructions and valued the warrants at $3.97 per share - a value he knew to be grossly inflated for warrants that could not be publicly traded and that had been acquired for free only weeks earlier. The $3.97 valuation caused a paper increase of $13,895,000 in NAV in two weeks' time. Newman expressed his thanks for Pennecke's assistance in an e mail saying, "you da man, thanks."

In the second cited example, BAS knowingly inflated the value of restricted shares of Nu-D-Zine stock at Lauer's request. On December 27, 2000, Lauer sent Pennecke an LOA requesting

11

that BAS send a wire transfer of $250,000 for the purchase of 6,812,500 shares of Nu-D-Zine stock, indicating a purchase price of approximately 3.7 cents per share. Lauer's handwritten note at the bottom of the LOA stated, "(Please price @ $0.50 tonight.)." Although he knew that there could be no possible legitimate basis for making a more-than twelve-fold increase in valuation overnight, Pennecke complied.

In the third example, BAS retroactively changed a January 31, 2003 Position Report to overvalue a publicly traded stock. On February 5, 2003, Newman sent a BAS account representative an e mail with a subject heading that read, "Johnny O - please call me when you get this - thanks." The e mail instructed:

Update prices for 1/31/03

FFIRD $5

FFIR $3.50

Thanks, Dave

FFIRD was the publicly traded stock symbol of Fidelity First Financial Corp. FFIRD's value was provided through the data feed that BAS received on a daily basis from its third-party pricing sources. BAS complied with Newman's request and overrode the valuation of $3.63 per share for FFIRD that had been automatically entered into the BAS computer system with a phony inflated valuation of $5 per share contrived by Newman despite the absence of trades that could justify the increase. BAS similarly changed the valuation of FFIR from $3 to $3.50 per share. Those changes resulted in an apparent, bogus gain of over $35 million in the Funds' NAV.

According to the allegations of the complaint, BAS had actual knowledge that the Position Reports would be relied upon by the Funds' auditor and administrators in calculating and verifying the Funds' NAVs because: (a) BAS knew that the Position Reports were the only reports reflecting the entirety of the Funds' holdings by depicting the values of the positions held both in the custody of BAS and away from BAS; (b) BAS knew that Lauer and Lancer Management were downloading and printing the Position Reports and providing them to third parties, including the Funds' auditor and administrators; and (c) BAS itself provided these parties with direct access to the BAS computer system for the purpose of allowing them to review, download, and print the Position Reports generated and posted there by BAS. BAS also had actual knowledge that investors and potential investors would receive the NAV statements and audits based on the falsified valuations and rely on them in making investment decisions.

Moreover, Lauer and Lancer Management managed the funds in exchange for receiving certain fees, which were based on the Funds' NAVs. The fraudulent inflation of the Funds' NAVs, which BAS assisted, was intended to, and did, artificially and improperly inflate the management, incentive, and administrative fees claimed by Lauer, Lancer Management, and others. As an experienced prime broker for hedge funds, BAS knew the importance of portfolio valuations and NAV statements, and the ways that Lauer, Lancer Management, the Funds' auditors and administrators, investors, and potential investors would use them.

**The Rulings of the District Court**

The district court granted BAS's motion to dismiss the allegations against BAS on the

13

ground that the complaint failed to satisfy the burden of pleading proximate causation of the Plaintiffs' losses. The district court believed the complaint contained only "conclusory assertions" and failed to assert that BAS's Position Reports played any significant role in the Plaintiffs' perception of the valuation of the Funds.

**DISCUSSION**

We review *de novo* the district court's grant of a motion to dismiss. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). We construe the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in Plaintiffs' favor. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). To plead proximate cause, the complaint must allege that Plaintiffs' injury was a direct or reasonably foreseeable result of BAS's conduct. *See Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 284 (2d Cir. 1992), *abrogated on other grounds*, *see Gerosa v. Savasta & Co.*, 329 F.3d 317, 327-28 (2d Cir. 2003); *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 370-71 (S.D.N.Y. 2007).

Plaintiffs contend that the complaint sufficiently alleged proximate causation by setting forth that the investors' losses were the direct or reasonably foreseeable result of BAS's role in falsifying and disseminating the BAS reports that were used to prepare the NAV statements and audited financial statements on which the investors relied for financial decisions. We agree. The complaint did not contain merely "conclusory assertions." Rather, the complaint plausibly and in adequate detail set forth allegations that BAS knowingly placed false values of the Funds'

holdings in the Position Reports published in BAS's name with actual knowledge that these Position Reports would be relied upon by the Funds' auditor and administrators in calculating and verifying the Funds' NAVs, and that BAS thus knew that investors and potential investors would receive NAV statements and audits based on the falsified valuations and would base investment decisions on the fraudulent valuations. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (requiring "enough facts to state a claim to relief that is plausible on its face"); *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

Specifically, the complaint pleads that, at the request of Lauer and Lancer Management, BAS placed false values of the Funds' holdings on the Position Reports, which contained BAS's name at the top of each page, without any disclaimer or other marking to suggest that they were anything other than official documents prepared by and bearing the imprimatur of BAS. The complaint provided specific examples of BAS's role in the fraud, involving BAS's participation in falsifying values for XtraCard warrants, Nu-D-Zine restricted shares, and a publicly traded stock (FFIRD).

The complaint alleges further that BAS participated in the fraud with actual knowledge that BAS's Position Reports would be relied upon by the Funds' auditor and administrators in calculating and verifying the Funds' NAVs, and with knowledge that investors and potential investors would therefore receive the NAV statements and audits based on the falsified valuations

and would base investment decisions on them. The complaint supported these allegations with assertions that: (a) BAS knew that the Position Reports were the only reports reflecting the entirety of the Funds' holdings by depicting the values of the positions held both in the custody of BAS and away from BAS; (b) BAS knew that Lauer and Lancer Management were downloading and printing the Position Reports and providing them to investors, potential investors, and third parties, including the Funds' auditor and administrators; and (c) BAS itself provided the Funds' auditor and administrators with direct access to the BAS computer system for the purpose of allowing them to review, download, and print the Position Reports generated and posted there by BAS.

Finally, the complaint alleges that the fraudulent scheme to inflate the Funds' NAVs was intended to, and did, artificially and improperly inflate the management, incentive, and administrative fees paid by the Funds to Lauer, Lancer Management, and others, thus diminishing the value of the Plaintiffs' investments. As an experienced prime broker for hedge funds, BAS knew the importance of portfolio valuations and NAV statements, and the ways that Lauer and Lancer Management would use them. It is a fair inference of the complaint that this included BAS's knowledge that Lauer and Lancer Management would use the falsified NAVs to fraudulently inflate their management fees.

Whether the Plaintiffs will be able to prove the allegations set forth in the complaint is quite another matter. Since we are at the pleading stage, we need not resolve this question. Accepting all factual allegations in the complaint as true, and drawing all reasonable inferences

from them in the Plaintiffs' favor, we must conclude that Plaintiffs have adequately pled that BAS aided and abetted frauds and breaches of fiduciary duty in a manner which proximately caused losses to the Plaintiffs.

## CONCLUSION

For the reasons set forth above, the judgment of the district court is vacated and the case is remanded for further proceedings consistent with this opinion.